**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

No. 99-41486
_____

ANNA DOMINO; ET AL.,

Plaintiffs,

SHERENA DOMINO, As Administrator of the Estate of Antoine Domino,

Plaintiff-Appellee,

VERSUS

TEXAS DEPARTMENT OF CRIMINAL JUSTICE, INSTITUTIONAL DIVISION;
ET AL.,

Defendants,

SRINIVAS REDDY,

Defendant-Appellant.

_____

Appeal from the United States District Court
For the Eastern District of Texas

_____

February 7, 2001

Before JOLLY and DAVIS, Circuit Judges, and RESTANI[1], Judge.

DAVIS, Circuit Judge:

Anna Domino, et al. filed this § 1983 suit as administrator of the estate of Texas Department of Corrections prisoner Antoine Domino (Domino) against Dr. Srinivas Reddy (Reddy) and other TDC

_____

[1]Judge of the U.S. Court of International Trade, sitting by designation.

1

officials following Domino's suicide.  Plaintiff alleged that Dr. Reddy, a prison psychiatrist, by failing to predict Domino's suicide, was deliberately indifferent to Domino's medical needs and thereby violated his Eighth Amendment right to be free from cruel and unusual punishment.  Dr. Reddy moved for summary judgment based on qualified immunity.  The magistrate judge denied Reddy's motion and Reddy filed this interlocutory appeal.  For the reasons that follow, we reverse.

## I.

Antoine Domino committed suicide by hanging himself with a bed sheet in his prison cell at the Coffield Unit of the Texas Department of Criminal Justice ("TDCJ") on August 2, 1996.  Reddy was a psychiatrist at the Coffield Unit at the time of Domino's suicide and had treated him on a number of occasions.  On August 2, 1996, Domino asked to meet with a member of the Psychiatric Team at Coffield.  Domino met with a prison psychologist, Gayle Haynes, who then referred Domino to Reddy for further evaluation.  Reddy's evaluation of Domino lasted approximately five minutes.

During this meeting, Domino asked for sleeping pills and expressed apprehension about his upcoming transfer from administrative segregation to the general prison population.  After Reddy denied his request for sleeping pills, Domino said, "I can be suicidal."  Reddy did not believe that Domino was a suicide risk at that time, thinking instead that Domino's statement was an attempt to achieve "secondary gain," such as sedatives or a single cell. Domino then began banging his head on the table and Reddy had the

2

guards take Domino back to his cell.  Two and a half hours later, Domino committed suicide.

Domino had a long history of psychological problems.  Even before being incarcerated, he was hospitalized for his psychological problems and also attempted suicide several times. Reddy did not start working at Coffield until January 1995.  Domino was already an inmate at this time, but he was not sent to Reddy until March 1995, when Domino was found in his cell with a homemade noose.  Reddy diagnosed Domino as suffering from recurrent major depression and started him on Prozac, an antidepressant medication. Reddy also placed Domino back on the active psychiatric caseload and ordered weekly visits with a therapist.

In March 1995, Domino was transferred to Skyview Psychiatric Hospital for six days after he made more suicide threats at Coffield.  At Skyview, Domino was diagnosed as suffering from bipolar (manic-depressive) disorder, with depression in full remission.  In Domino's discharge note, the Skyview physicians wrote that some of his behavior could be characterized as manipulative. When Domino returned to Coffield, Reddy examined him again and prescribed Lithium to treat the bipolar disorder.

Reddy saw Domino in April 1995 for a routine follow up appointment.  Reddy continued Domino's Lithium medication.  Reddy also kept Domino on Prozac because he continued to be depressed, and scheduled another follow up appointment for June 1995. At this meeting in June, Reddy continued Domino's Prozac and Lithium medications even though Domino refused to permit blood work that

was necessary to monitor his Lithium medication. Domino continued to refuse to permit this blood work.

In August 1995, Reddy discontinued both of Domino's medications, stating that Domino was not compliant in taking his medications and refused to permit the necessary blood work. Domino did not attend his scheduled counseling sessions in September and October 1995. In December 1995, the entire Psychiatric Team at Coffield, including Reddy, decided to release him from the active caseload. Their report stated that Domino was no longer expressing psychotic symptoms and would be seen only upon request.

Domino was not examined again until June 1996, when he asked to see a psychiatrist. A member of the Psychiatric Team met with him, and wrote in Domino's file that "suicidal ideation was present but no plan [was] evident." Domino scheduled another meeting with a therapist in July 1996, which Domino failed to attend. Domino next met with a member of the Psychiatric Team on the day of his suicide, as described above.

The administrator of Domino's estate, Sherena Domino ("Ms. Domino"), sued Dr. Reddy and others under 42 U.S.C. § 1983. All parties consented to a trial by a magistrate judge. More particularly, Ms. Domino alleges that Reddy was deliberately indifferent to Domino's serious medical needs in violation of the Eighth Amendment's prohibition of cruel and unusual punishment. Ms. Domino claims Reddy should have recognized that Domino was suicidal and either transferred him to Skyview or taken other measures to prevent his suicide. Reddy moved for summary judgment

4

based on qualified immunity, but the magistrate judge denied Reddy's motion.  This interlocutory appeal followed.

## II.

The parties first disagree about whether this court has jurisdiction over this appeal.  This court has stated that:

> [A] public official asserting a qualified immunity defense may not seek interlocutory appellate review of a district court's evidence sufficiency determination, [but] he or she may nevertheless argue on appeal [1] that the facts, even when viewed in the plaintiff's favor, demonstrate that the plaintiff's constitutional rights were not violated . . . .

Vance v. Nunnery, 137 F.3d 270, 273 (5th Cir. 1998)(citing Behrens v. Pelletier, 516 U.S. 299, 116 S.Ct. 834 (1996).  In the context of medical care, a prison official violates the Eighth Amendment when he acts with deliberate indifference to a prisoner's serious medical needs.  Estelle v. Gamble, 429 U.S. 97, 105-06, 97 S.Ct. 285, 291-92 (1976).  Also, "a serious medical need may exist for psychological or psychiatric treatment, just as it may for physical ills."  Partridge v. Two Unknown Police Officers of the City of Houston, 791 F.2d 1182, 1187 (5th Cir. 1986).  Reddy argues that even when the disputed facts are viewed in Domino's favor, Reddy was not deliberately indifferent to Domino's serious medical needs and therefore did not violate Domino's constitutional rights.  We agree with Reddy that this court has jurisdiction over this appeal to decide that legal issue when the disputed facts are viewed in Domino's favor.

## III.

Reddy first raises several challenges to the admissibility of

evidence used by the magistrate in deciding Reddy's summary judgment motion. We need not rule on these challenges, because we hold that even when this disputed evidence is admitted against Reddy, and the disputed facts are viewed in favor of Ms. Domino, that Reddy did not act with deliberate indifference to Domino's serious medical needs.

This court has stated that the test for qualified immunity "is quite familiar: (1) whether the plaintiff has alleged a violation of a clearly established constitutional right; and (2) if so, whether the defendant's conduct was objectively unreasonable in the light of the clearly established law at the time of the incident." Hare v. City of Corinth, Miss., 135 F.3d 320 (5th Cir. 1998)(en banc). As discussed above, the first part of the qualified immunity test - whether Domino has alleged a violation of a clearly established constitutional right - depends on whether the summary judgment evidence, viewed in a light favorable to Ms. Domino, demonstrates that Reddy was deliberately indifferent to Domino's serious medical needs.

The Supreme Court has stated that:

> We reject petitioner's invitation to adopt an objective test for deliberate indifference. We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 1979 (1994) (emphasis added). Therefore, in order to prove deliberate

6

indifference, Domino was required to demonstrate that Reddy both knew of and disregarded an excessive risk that Domino would commit suicide.

## IV.

The magistrate judge stated that Ms. Domino "presented competent summary judgment evidence refuting defendant's claims that go beyond only questioning Dr. Reddy's medical judgment . . . ." Magistrate Judge's Order of December 17, 1999. R. at 816. The magistrate went on to hold that:

> Reddy's lengthy periods of absence from treating Domino and the fact that it only took him five minutes while Domino was banging his head on his desk to determine Domino was only seeking secondary gain is sufficient summary judgment evidence showing a material question of fact exists as to whether Dr. Reddy's treatment of Domino rose to the level of deliberate indifference.

Id. R. at 818-19.

In opposing Reddy's summary judgment motion, Ms. Domino relied on several pieces of evidence, including the affidavit of Dr. Koson. In his affidavit, Dr. Koson states that Reddy's five minute evaluation of Domino and subsequent inaction amounted to a "virtual abandonment" of a patient who was suicidal and experiencing a mental health crisis. Ms. Domino also presented medical records showing that Gayle Haynes, the psychologist who met with Domino on the day of his suicide, wrote in her report that Domino was "extremely fearful and paranoid. He expressed suicidal ideations. He was hopeless and depressed." Ms. Domino also presented the testimony of a prison guard that escorted Domino to and from his meeting with Reddy on the day of the suicide. The guard stated

7

that the meeting between Domino and Reddy lasted only five minutes. The guard also stated that during this meeting, Domino was banging his head on the table loud enough for the guards outside Reddy's office to hear.

We disagree with the magistrate judge's holding that Ms. Domino has presented sufficient summary judgment evidence to show that a material question of fact exists as to whether Reddy's conduct constitutes deliberate indifference.

The magistrate judge's statement that Domino was "relatively unexamined" from June 1995 to August 1996 is inconsistent with the record. The record reflects that members of the psychiatric unit were monitoring Domino's condition. Also, the mental health professional scheduled counseling sessions for Domino even though Domino often did not appear for these sessions. The record therefore reflects the critical fact that Domino was not being ignored by Reddy and the other psychiatrists.

With respect to the brevity of Dr. Reddy's final examination of Domino, Gayle Haynes' report also reflects that she spent about five minutes evaluating Reddy. Haynes also testified that Domino often said that "he'd kill himself, he wanted to die, but he said that all the time. It wasn't new." Haynes' testimony, taken as a whole, does not support the conclusion that there was an obvious risk of suicide on August 2, 1996.

Dr. Koson's expert report would be valuable in a medical malpractice suit to support an argument that Reddy made an incorrect diagnosis. But Koson's report does not support an

8

inference that Domino was so obviously suicidal that Reddy must have known yet disregarded that risk.

Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference. Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985). Rather, the plaintiff must show that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." Id. Furthermore, the decision whether to provide additional treatment "is a classic example of a matter for medical judgment." Estelle, 429 U.S. at 107. And, the "failure to alleviate a significant risk that [the official] should have perceived, but did not" is insufficient to show deliberate indifference. Farmer, 511 U.S. at 838.

Suicide is inherently difficult for anyone to predict, particularly in the depressing prison setting. Collington v. Milwaukee Co., 163 F.3d 982, 990 (7th Cir. 1998). Reddy presented evidence that Domino had been a difficult, often uncooperative patient and concluded that Domino was threatening suicide to obtain secondary gain. He did not believe the threat was genuine. Reddy's diagnosis was wrong. But, as stated above, an incorrect diagnosis does not amount to deliberate indifference. Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985).

CONCLUSION

9

For the above reasons, we are satisfied that the summary judgment evidence would not permit a reasonable jury to conclude that Dr. Reddy knew that Domino was a serious suicide risk. The judgment of the district court is therefore reversed and this case is remanded to the district court for entry of judgment in favor of Dr. Reddy.

REVERSED AND REMANDED.