**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

**No. 01-11032**

**EDWARD JAMES CALHOUN,**

**Plaintiff-Appellant,**

**VERSUS**

**CLYDE HARGROVE; MARK ATKINS,**

**Defendants-Appellees.**

Appeal from the United States District Court
For the Northern District of Texas

November 15, 2002

Before HIGGINBOTHAM, DUHÈ, and DeMOSS, Circuit Judges.
DeMOSS, Circuit Judge:

Appellant, Edward James Calhoun, a Texas state prison inmate, filed suit *pro se* under 42 U.S.C. § 1983 against two prison officials for violations of his Eighth and Fourteenth Amendment rights. After Calhoun failed to respond to the Appellees' Motion for Summary Judgment, the magistrate judge construed the motion as one for dismissal pursuant to Fed. R. Civ. P. 12(b)(6), and dismissed Calhoun's claims for failure to state a claim. Calhoun now appeals.

**BACKGROUND**

On October 28, 1999, Appellant Edward James Calhoun, Jr., Texas state prisoner, filed a § 1983 complaint against Captain Clyde Hargrove (Captain of Security), for abuse, mistreatment, denial of due process, and cruelty, and Lieutenant Mark Atkins (Lieutenant of Security), for abuse, mistreatment, and failure to report or stop the former's abuse. Calhoun alleged that he was assigned to work in the prison's administration building as a support services inmate porter. His duties included mopping, sweeping, and waxing floors, emptying trash, cleaning windows, dusting offices, cleaning restrooms, moving furniture, and other janitorial duties. He alleged that he suffered from hypertension, asthma, epileptic seizures, and glaucoma and that he had injured his left knee in a fall and had suffered a head injury. Because of his medical restrictions, he claims he was limited to a four-hour work schedule. His restrictions included limitations on walking, standing, and lifting. He alleged that the Appellees were aware or should have been aware of these restrictions. Calhoun alleged that while he was working under Captain Hargrove, Hargrove called him names like "crack smoker," "thief," and "whore."

Calhoun alleged that on numerous occasions, Hargrove called him and his co-worker, inmate Ronald Paul Williams, into his office and ordered them to pick up sunflower seeds and the shells that he had spit on the floor. Then, before they could leave the room,

Hargrove would spit another handful of seeds on the floor and would order them to pick them up. Calhoun alleged that despite his reminding Hargrove of his work restrictions, Hargrove routinely made him work 10, 12, and 14-hour days. Calhoun alleged that if Hargrove was not around, Lieutenant Atkins would allow him to return to his cell after he completed his tasks. However, if Hargrove was there, Atkins would send him to Hargrove, who would make him work more. Calhoun alleged that Atkins knew that Hargrove was working him beyond his physical abilities and medical restrictions but failed to intervene or report the violations.

Calhoun alleged that one day after he and Williams had worked for 10 hours, Hargrove allowed them to have lunch only after they got on their knees and begged for it. Calhoun complained that Atkins did not report this incident. He alleged that he spent 12 hours stripping and waxing the floors in June 1999, because Hargrove refused to call out the inmate who usually helped with the floors. Calhoun asserted that after he reported the abuses, someone informed Hargrove that he had done so. Consequently, when he returned to work, Hargrove called him into his office and threatened to make his life miserable. Calhoun alleged that on June 24, 1999, Hargrove then went into his porter's supply closet and pulled all the towels and cleaning rags from the shelves and threw them on the floor. Calhoun refolded the towels and rags, and Hargrove again threw them onto the floor. Calhoun refolded them again and Hargrove again threw them onto the floor. When Calhoun

asked if he could leave because he had been working for eight hours, Hargrove said no. Around midnight, Hargrove called Calhoun into his office and ordered him to pick up sunflower seeds he had spit on the floor. After Calhoun finished picking them up, Hargrove spit more seeds on the floor and ordered Calhoun to pick them up. Hargrove allegedly repeated this conduct twice more that night. After picking the seeds up for the fourth time, Calhoun alleged that he almost passed out because of high blood pressure. Calhoun alleged that his blood pressure was near stroke level, but, that after one hour of supervision at the infirmary, it had stabilized. He alleged that on August 6, 1999, he was relieved of all job duties.

Calhoun then filed the present suit seeking injunctive relief and compensatory and punitive damages. The Appellees filed an answer, and all of the parties consented to proceed before a magistrate judge. The Appellees then filed a motion for summary judgment, but because the motion for summary judgment did not contain any evidentiary support, such as affidavits or prison records, the magistrate judge construed it as a motion to dismiss for failure to state a claim upon which relief could be granted pursuant to Fed. R. Civ. P. 12(b)(6) and granted it. Judgment was entered on August 1, 2001.

On August 8, 2001, Calhoun filed a motion for new trial and a notice of appeal. Relying on Calhoun's assertion in his motion for new trial that he was never served with the motion for summary

judgment and on the defendants' failure to file a response, the magistrate judge granted Calhoun's motion and vacated its memorandum opinion and judgment. The Appellees filed a motion for reconsideration and motion to strike pleadings, alleging that they were not served with the motion for new trial. Attached to their motion were documents establishing that Calhoun was served with their motion for summary judgment. On September 21, 2001, the magistrate judge granted the defendants' motion and (1) vacated its order granting Calhoun's motion for new trial, (2) reinstated its memorandum opinion and judgment, and (3) ordered Calhoun to show cause why sanctions should not be imposed for making a false representation to the court. Subsequently, on September 27, 2001, Calhoun filed a response to the defendants' motion for reconsideration and to strike pleadings alleging, *inter alia*, that he did not receive a copy of their motion for summary judgment. On October 2, 2001, Calhoun filed a response to the court's order reinstating its judgment. On October 30, 2001, the magistrate judge entered an order construing Calhoun's response to its order as a motion for a new trial pursuant to Fed. R. Civ. P. 59 and denied it. Calhoun timely filed his notice of appeal from the district court's order.[1]

---

[1]Though the exact procedural history of this case is unorthodox, the only issue of concern to this panel is whether the original complaint should have been dismissed for failure to state a claim.

## DISCUSSION

This Court reviews *de novo* a district court's granting a motion to dismiss for failure to state a claim. ***Blackburn v. City of Marshall***, 42 F.3d 925, 931 (5th Cir. 1995). In considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. ***McCartney v. First City Bank***, 970 F.2d 45, 47 (5th Cir. 1992). "It is well-established that 'pro se complaints are held to less stringent standards than formal pleadings drafted by lawyers.'" ***Taylor v. Books A Million, Inc.***, 296 F.3d 376, 378 (5th Cir. 2002) (quoting ***Miller v. Stanmore***, 636 F.2d 986, 988 (5th Cir. 1981)).

A claim for relief under § 1983 must allege the deprivation of a right secured by the Constitution or the laws of the United States by a defendant acting under color of state law. ***Wong v. Stripling***, 881 F.2d 200, 202 (5th Cir. 1989). Furthermore, under 42 U.S.C. § 1997e(e), "[n]o federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."

Calhoun essentially alleges that he was verbally abused, that he was once forced to beg for a meal (which he eventually received), and that he was forced to work beyond the medical

7

limitations set for him causing him to have dangerously elevated blood pressure. Neither the verbal abuse, nor the begging for the meal allege a physical injury to Calhoun and, though troubling, do not overcome § 1997e(e). Furthermore, to establish an Eighth Amendment claim, Calhoun must demonstrate, *inter alia*, an objective component of conditions so serious as to deprive him of the minimal measure of life's necessities. **Berry v. Brady**, 192 F.3d 504, 507 (5th Cir. 1999). Therefore, Calhoun's claims of verbal abuse are not actionable under § 1983, *see* **Siglar v. Hightower**, 112 F.3d 191, 193-94 (5th Cir. 1997), and neither are his claims that he was forced to once beg for food that he eventually received. *See* **Berry**, 192 F.3d at 507-08 (dismissing inmate's claim that he was denied admittance to the dining hall for an evening meal on eight occasions over a seven-month period).

Whether Calhoun's claim that he was forced to work beyond his medical limitations which, in turn, led to his unusually high blood pressure alleges a physical injury is less clear. This inquiry is also of importance in analyzing Calhoun's Eighth Amendment claims. The Supreme Court has held that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. **Farmer v. Brennan**, 511 U.S. 825, 832 (1994). "[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk

8

of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847. In other words, the prison official must have a sufficiently culpable state of mind, which is one of "deliberate indifference" to inmate health or safety. *Id.* at 834. To find that an official is deliberately indifferent, it must be proven that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Though the magistrate judge analyzed Calhoun's claim as an excessive force claim and found the injury to be *de minimus* and not actionable, we believe that Calhoun's complaint, at the very least, also alleges deliberate indifference on the part of Hargrove. Calhoun alleged that he had a medical condition, had a set limit of four hours of maximum work time, and that Hargrove knew of this limit and his medical condition but made him work in excess of these time limits. Calhoun also alleged that this ultimately led to his elevated blood pressure. Therefore, Calhoun has met the requirements needed to overcome a 12(b)(6) motion for failure to state a claim. As for alleging a physical injury under § 1997e(e), Calhoun has alleged that his blood pressure was at near-stroke levels. The magistrate failed, however, to hold any sort of hearing, evidentiary or otherwise, into the level of harm resulting

9

from the elevated blood pressure. High blood pressure, or hypertension, can have severe negative impacts on a person's heart, arteries, brain, eyes and kidneys, and a systolic reading (the first or top number in a blood pressure reading) of over 210 is considered severely elevated and may be a medical emergency that requires immediate attention. American Medical Association, Essential Guide to Hypertension 33-45, 52 (1998). Calhoun had a reading of 220/195 at one point just after the incident and was not permitted to leave the infirmary until his pressure was 165/99. This caused Calhoun to allegedly be light-headed and be near stroke-level. Based on these allegations, the magistrate judge should have inquired further into the severity of the damage done to Calhoun to determine if any actual injury did occur to him as a result of this incident.

Calhoun also makes claims under the Fourteenth Amendment claiming that the Appellees denied him due process by failing to adhere to his medical and work restrictions. This is really a restatement of his Eighth Amendment claim, however, and claims that are covered by such specific constitutional provisions must be analyzed under the standard appropriate to that specific provision and not under the rubric of substantive due process. *Graham v. Connor*, 490 U.S. 386, 395 (1989). As for Calhoun's claims against officer Atkins, except for a conclusional statement in his reply brief, Calhoun has not re-urged his argument that Atkins is liable

for his failure to intervene or report Hargrove's actions, and as such, those claims are waived. *See Yohey v. Collins*, 985 F.2d 222, 225 (5th Cir. 1993) (holding claims raised for first time in reply brief to be waived).

## CONCLUSION

The level of abuse alleged by Calhoun, which, if true, can only be described as malicious hazing on the part of Hargrove, is troubling. It is clear that Calhoun has at least alleged a deprivation of his Eighth Amendment right to be free from cruel and unusual punishment because he has alleged that Hargrove knew of his physical and medical limitations and forced him to work in excess of those limits, thus endangering Calhoun's life. However, Calhoun's suit is not actionable unless there exists a showing of physical injury. 42 U.S.C. § 1997e(e). Having carefully reviewed the parties' respective briefs and the record, we hold that the magistrate judge erred in granting the 12(b)(6) motion. We therefore REVERSE IN PART and REMAND so that a hearing may be conducted to determine the level of injury sustained by Calhoun. It may be that no harm resulted from Hargrove's alleged abuses, but for now, Calhoun has sufficiently pled his complaint to overcome a 12(b)(6) motion.

**REVERSED IN PART** and **REMANDED.**

11