LESLIE H. SOUTHWICK, Circuit Judge: *
Following Wilbert Henson’s death while in pretrial detention, his family bi'ought suit alleging the deprivation of Henson’s constitutional rights. See 42 U.S.C. § 1983. Defendant Kaye Krajca filed a motion for summary judgment, asserting qualified immunity. The district court denied the motion, and Krajca appealed the collateral order. We REVERSE and REMAND.
FACTS AND PROCEDURAL HISTORY
On Tuesday, November 23, 2004, Henson was arrested in Wichita County, Texas, on a bond forfeiture warrant for driving with a suspended license. He was taken to the downtown Wichita County Jail. When Henson arrived at the jail, he complained of trouble breathing. He informed the jail nurse on duty, Michelle George, that he suffered from chronic obstructive pulmonary disease and emphysema. He also told her that he had recently been treated at the emergency room for pneumonia, but that he did not fill the prescriptions given to him at that time for an antibiotic, prednisone, and an inhaler. Nurse George gave Henson an antibiotic and an inhaler, and she scheduled him for the next doctor’s call, to take place the next morning at the downtown jail.
That night, Henson was moved from the jail to the jail annex. Therefore, he was not at the jail for the scheduled doctor’s call. When Nurse George realized this, she scheduled Henson for the next doctor’s call at the annex. This usually would have occurred the next day, November 25, but no doctor’s call occurred then because it was Thanksgiving Day.
At the annex, Henson’s health declined. His breathing worsened, and other inmates requested medical treatment for him. On November 26, Henson was visited by Nurse Kaye Krajca, who administered breathing treatments and scheduled Henson for the next doctor’s call.
On November 27, the detention officers requested that Henson be moved to the medical segregation cell, and Nurse George and Nurse Krajca each authorized the move. In the medical solitary cell, Henson continued to receive breathing treatments and was monitored by detention officers. His health, though, continued to deteriorate. At this point, Henson still had not been examined by a doctor or taken to the hospital.
On November 29, the detention officers found Henson in severe distress. He was short of breath and could not walk or stand. Henson said, “I’m done. I’m not gonna make it.” Shortly thereafter, Henson stopped breathing. The officers administered CPR until an ambulance arrived, and Henson was pronounced dead at the hospital. The Medical Examiner reported his cause of death as chronic obstructive pulmonary disease.
Henson’s family brought suit against various defendants. Nurse Krajca was *343 sued in her individual capacity pursuant to 42 U.S.C. § 1983. Violations of the Fourth and Fourteenth Amendments were alleged, and state law claims were also alleged.
The district court dismissed all claims against Nurse Krajca except for deliberate indifference in violation of the Fourteenth Amendment. She filed this interlocutory appeal seeking to reverse the denial of qualified immunity.
DISCUSSION
When a district court denies summary judgment on the basis of qualified immunity, the order is immediately appealable “to the extent that it turns on an issue of law.” Manís v. Lawson, 585 F.3d 839, 842 (5th Cir.2009) (quotation marks and citation omitted). Our jurisdiction on appeal is limited. We have jurisdiction to determine whether a factual dispute is material, but not whether it is genuine. Id. We accept the plaintiffs version of events as true and examine “only whether the district court erred in assessing the legal significance of the conduct that the district court deemed sufficiently supported for purposes of summary judgment.” Kinney v. Weaver, 367 F.3d 337, 348 (5th Cir.2004) (en banc). We review this question de novo. Id. at 349.
The doctrine of qualified immunity provides that government officials are immune from liability for civil damages unless (1) the official has violated the plaintiffs constitutional rights, and (2) the official’s conduct was “objectively unreasonable in light of clearly established law at the time of the conduct in question.” Freeman v. Gore, 483 F.3d 404, 410-11 (5th Cir.2007) (citations omitted).
To support the first element, the Henson family alleged a violation of Henson’s constitutional rights under the Fourteenth Amendment. The Fourteenth Amendment requires that state officials not disregard the “basic human needs” of pretrial detainees, including medical care. Hare v. City of Corinth, Miss., 74 F.3d 633, 650 (5th Cir.1996) (en banc). An official violates this right when she responds to a detainee’s serious medical needs with deliberate indifference. Id. Deliberate indifference is shown when “the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.” Calhoun v. Hargrove, 312 F.3d 730, 734 (5th Cir.2002) (quoting Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)). This was clearly established law at the time of the incident in question.
Presented to the district court were two alleged failures by Nurse Krajca that could constitute deliberate indifference. Although the district court consolidated its analysis, we will analyze each separately.
The claim against Nurse Krajca is based on two contacts she had with Henson. The first was on November 26, when she was called to the jail annex to visit Henson. Henson told Nurse Krajca his medical history. She filled out a request for Henson to see the doctor on the next doctor’s call. She also gave him an albu-terol breathing treatment and prescribed that the jail staff give Henson the treatment every four hours. It is disputed how much time Nurse Krajca spent with Henson during this visit. The jail log book indicated she spent ten minutes with Henson, yet Nurse Krajca testified she spent about 90 minutes with him. She did not record any vital signs she may have taken. While Krajca contends that she must not have recorded them because they were normal, the Henson family argues that a reasonable inference from the absence of *344 recorded vital signs is that the information was never taken.
The only other relevant involvement Krajca had with Henson occurred the next night at approximately 11:00 p.m. Officers first called Nurse George, who was on duty at the jail, to request that Henson be moved to the medical segregation cell because he was still having difficulty breathing. Nurse George approved the move and ordered that the detention officers observe Henson every 15 minutes. The detention officers then called Nurse Krajca for a second opinion. Nurse Krajca independently authorized Henson’s move to the medical segregation cell and instructed that his condition be monitored by the detention officers every 30 minutes.
The district court concluded that there was a disputed issue of fact over whether Nurse Krajca had subjective knowledge of Henson’s continued or worsening breathing difficulties. “Whether a prison official had the requisite knowledge of a substantial risk is a question of fact....” Farmer, 511 U.S. at 842, 114 S.Ct. 1970. On this interlocutory appeal, we do not have jurisdiction to consider whether disputes of fact exist. See Kinney, 367 F.3d at 348.
Thus, there is some evidence Nurse Krajca was aware of Henson’s continued breathing difficulties. That evidence does not end our inquiry. Deliberate indifference is shown only when “the official knows of and disregards an excessive risk to inmate health or safety....” Calhoun, 312 F.3d at 734 (quotation marks and citation omitted) (emphasis added). Officials will have disregarded a risk to an inmate only when they “refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.” Domino v. Tex. Dep’t of Criminal Justice, 239 F.3d 752, 756 (5th Cir.2001) (quotation marks and citation omitted). “[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not.” Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir.1999) (citation omitted).
The undisputed evidence indicates that Nurse Krajca continued the course of treatment begun by another nurse. This course of treatment was the one previously prescribed by a doctor at the emergency room. Nurse Krajca also ordered detention officers to monitor Henson’s condition, and she placed Henson on the next doctor’s call. The evidence does not suggest that Nurse Krajca “purposefully neglected [Henson’s] medical needs.... ” See Gobert v. Caldwell, 463 F.3d 339, 349 (5th Cir.2006).
We have found evidence of deliberate indifference where jail nurses knew of the inmate’s medical needs but ignored doctors’ explicit treatment orders to meet those needs. Lawson v. Dall. Cnty., 286 F.3d 257, 263 (5th Cir.2002). To the contrary, in this case, Nurse Krajca continued the course of treatment of a doctor who had previously treated Henson. “[T]he decision whether to provide additional treatment ‘is a classic example of a matter for medical judgment.’ ” Domino, 239 F.3d at 756 (quoting Estelle v. Gamble, 429 U.S. 97, 107, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)).
Further, we are not persuaded by the Henson family’s argument that deliberate indifference can be inferred by violations of certain regulations and policies alone. Wichita County Sheriffs Office General Order 30.03 calls for transportation to the hospital of prisoners having “difficulty in sustaining or no breathing.” The Texas Nurse Practice Act provides that vocation *345 al nurses shall “[ojbtain instruction and supervision as necessary when implementing nursing procedures or practices.... ” 22 Tex. Admin.Code § 217.11(1)(G). Even if Henson should have been transported to the hospital for treatment, or Nurse Kraj-ca should have consulted the prison doctor, such violations at most establish that Nurse Krajca violated a standard of care. The violations do not establish deliberate indifference, which “exists wholly independent of an optimal standard of care.” Gobert, 463 F.3d at 349.
Nurse Krajca should have been granted qualified immunity as to her treatment of Henson’s breathing difficulties.
We next examine whether Nurse Krajca exhibited deliberate indifference to Henson’s vital signs. There is disputed evidence whether on the same night she was called about moving Henson to a different cell, Nurse Krajca requested Henson’s vital signs be taken. Officer Jason Shepherd testified that he was instructed to take Henson’s blood pressure and pulse that night and did so. Henson had a blood pressure of 208/107 and a heart rate of 92 beats per minute. He also was sweating profusely. It is disputed whether Nurse Krajca was informed of Henson’s vital signs at this time.
Officer Shepherd explained that an officer takes an inmate’s blood pressure and pulse rate only if he is instructed to by a nurse or supervisor, and “report[s] it directly to the nurse or to the supervisor, who [then] reports it to the ‘on-call nurse’ if there is not a nurse at the facility.” Although Nurse Krajca was not the on-call nurse that evening, there is evidence she received notice of Henson’s vital signs. Officer Wayne Parish stated in a memorandum written at the time of the events that Nurse Krajca requested Henson’s vital signs be taken, and she was given information about Henson’s medical condition. Nearly four years later, Officer Parish testified in his deposition that Nurse Krajca was given information only about Henson’s breathing condition, not his vital signs. The district court concluded that there was a disputed issue of fact over whether Nurse Krajca had subjective knowledge of Henson’s vital signs. We accept that there is some evidence Nurse Krajca was aware of Henson’s elevated vital signs. See Kinney, 367 F.3d at 348.
We now must determine whether Nurse Krajca exhibited deliberate indifference to Henson’s constitutional rights by disregarding an excessive risk to his health or safety. See Calhoun, 312 F.3d at 734. The plaintiffs have to show that based on the vital signs, Nurse Krajca “refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.” Domino, 239 F.3d at 756 (quotation marks and citations omitted).
Officer Parish’s memorandum indicates Nurse Krajca agreed with the first nurse’s decision to move Henson to medical solitary when Nurse Krajca was told his vital signs. Henson was moved to medical solitary and placed on 30-minute observation. Nurse Krajca received no other calls from detention officers that Henson was experiencing difficulties or that his condition was worsening. She later said that if Henson had continuing difficulties, she believed he would have requested a nurse as she had instructed him to do on November 26.
There is no evidence in the record that Henson’s vital signs constituted a dangerously high reading and warranted a particular course of treatment. There also is no evidence Henson’s elevated blood pressure contributed to his death. Nurse Krajca stated that moving Henson to medical segregation for monitoring would have been *346 appropriate given his recent breathing treatment and inhaler use. She testified that those stimulant medications “can temporarily result in higher readings on vitals because the pulse is elevated as a natural result of the medications and coughing related to the impact of such medication.”
Nurse Krajca did state, though, that had Henson’s elevated vital signs been reported to her, she would have gone to the jail annex and assessed his condition. Instead, she had the detention officers monitor Henson’s condition every 30 minutes. Because we accept that there is some evidence Nurse Krajca was aware of Henson’s vital signs, her admission essentially is a concession that she did not do what she considered appropriate under the circumstances. If deliberate indifference could be inferred solely from Nurse Kraj-ca’s failure to act in a manner consistent with her training, “the standard applied would be more akin to negligence than deliberate indifference.” Hare, 74 F.3d at 649 (quotation marks and citation omitted). While it might be evidence of negligence, her failure to go to the jail annex and personally assess Henson does not support a finding of deliberate indifference.
The dissent does not address the decision to grant Nurse Krajca qualified immunity as to her treatment of Henson’s breathing difficulties. Instead, the dissent insists no immunity is deserved as to Nurse Krajca’s response to Henson’s elevated vital signs. Relying on medical information from the American Heart Association’s website, the dissent contends Henson’s vital signs evidenced a hypertensive crisis and required Henson’s immediate transport to the hospital. The dissent concludes that Nurse Krajca never administered any treatment for Henson’s medical need, and that a jury could reasonably find Nurse Krajca was deliberately indifferent in refusing to treat that need. The dissent diagnoses Henson’s condition, prescribes the purported proper course of action, and then finds deliberate indifference for Nurse Krajca’s failure to have acted accordingly.
Though we need not decide, we are not convinced the dissent’s conclusions are matters appropriate for judicial notice.
Judicial notice must be taken cautiously; it applies only to facts not subject to reasonable dispute. See Fed.R.Evid. 201(b). This court previously has taken judicial notice of diagnostic criteria found in the American Psychiatric Association’s Diagnostic and Statistical Manual of Mental Disorders. United States v. Long, 562 F.3d 325, 334 n. 22 (5th Cir.2009). There, the legal issue was whether the district court should have permitted the defendant’s affirmative defense of insanity to go to the jury. Id. at 328. We reasoned that the Manual’s “authoritative nature makes the criteria ‘capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.’ ” Id. at 334 n. 22 (quoting Fed. R.Evid. 201(b)). This court specifically noted that the criteria was being used only as support for expert testimony and evidence already submitted. Id. Here, unlike in Long, the dissent relies on a website’s information with no other evidence in the record to support its conclusions.
Even if judicial notice of these matters is proper, Nurse Krajca’s failure to order Henson’s transport to the hospital immediately after receiving notice of his elevated vital signs is in the category of malpractice, not deliberate indifference. Gobert, 463 F.3d at 346. There is nothing on which it can be inferred that she “refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.” Domino, 239 F.3d *347 at 756 (quotation marks and citation omitted).
Nurse Krajca’s actions do not “clearly evince a wanton disregard for any serious medical needs.” Id. (citation omitted). Thus, the first element of the qualified immunity test is not met, and Nurse Kraj-ca is immune from suit.
We REVERSE the denial of qualified immunity and REMAND in order for the district court to dismiss the Section 1983 claims against Nurse Krajca.

 Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.