# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

February 10, 2016

Lyle W. Cayce
Clerk

No. 15-30326

CARMON ZAUNBRECHER, as natural tutor on behalf of the minor children, who are in the suit individually, and on behalf of their father, real party in interest Rachel Zaunbrecher, real party in interest Trevor Zaunbrecher, on behalf of Jamie Zaunbrecher; Trevor Zaunbrecher,

> Plaintiffs - Appellees

v.

MICHELLE GAUDIN; ROBYN RICHARD,

> Defendants - Appellants

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 13-CV-511

Before STEWART, Chief Judge, and KING and HIGGINSON, Circuit Judges.
PER CURIAM:*

Following Plaintiff-Appellee Jamie Zaunbrecher's death while an inmate at the Ascension Parish Jail, his family brought suit against, *inter alia*, Defendants-Appellants Robyn Richard and Michelle Gaudin, alleging that Zaunbrecher was deprived of his Eighth Amendment right to adequate medical

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-30326

care. Gaudin and Richard moved for summary judgment on qualified immunity grounds. The district court denied the motion, and Gaudin and Richard timely filed an interlocutory appeal. Because we conclude that neither Gaudin nor Richard was deliberately indifferent to Zaunbrecher's medical needs, we REVERSE and REMAND.

## FACTS AND PROCEDURAL HISTORY

Plaintiff-Appellee Jamie Zaunbrecher ("Zaunbrecher") was an inmate at the Ascension Parish Jail (the "Jail") from January 5, 2013, through the date of his death, February 24. During that time, the medical staff at the Jail consisted of several unit nurses, including Robyn Richard ("Richard"), one Nurse Supervisor, Michelle Gaudin ("Gaudin"), and one Nurse Practitioner, Ty Gautreau ("Gautreau"). Richard and Gaudin worked weekdays, and Gautreau treated inmates at the Jail only one day per week. When Zaunbrecher arrived at the Jail, he informed Jail officials that he had a number of pre-existing medical conditions, but did not disclose that he suffered from diverticulitis, a disorder that, according to his autopsy, ultimately contributed to his death.

The present appeal relates to Zaunbrecher's medical treatment beginning on Monday, February 18, 2013, when he first complained of pain, and ending on Sunday, February 24, when he arrived pulseless at a local hospital. Although a number of Jail personnel were involved with the events that occurred during this six-day period, only the actions and potential liability of Richard and Gaudin are at issue in this appeal.

On Monday, February 18, Zaunbrecher submitted a "Medical Request Form," seeking care for what he labeled as an "emergency." In that form, Zaunbrecher complained that his Ibuprofen pain medication had run out on the previous day. Zaunbrecher also complained, *inter alia*, that he had "started having a severe pain in [his right] side back;" that he had repeatedly asked for his pain medications to be replenished to no avail; and that he wanted to find

2

No. 15-30326

the origin of his pain.  Richard did not examine Zaunbrecher on February 18 because Zaunbrecher was away from the Jail for a court appearance.[1]  Richard addressed Zaunbrecher's medical request form the next day, Tuesday, February 19, by refilling Zaunbrecher's Ibuprofen, but did not examine him.

On Wednesday, February 20, Zaunbrecher submitted a second medical request form seeking emergency treatment.  Therein, Zaunbrecher complained, "Severe back pain/spasms – Continuous for 4 days.  No relief!"  Richard did not examine Zaunbrecher on February 20 because the Jail's normal routine was to examine inmates the day after, as opposed to the same day, inmates submit a medical request form.

Without reviewing the complaints written in his February 20 medical request form, Richard examined Zaunbrecher on Thursday, February 21.  Richard's notes from that examination reflect that Zaunbrecher complained of constipation and back pain that felt like "toxins."  Richard also noted that Zaunbrecher requested blood work and additional pain medication, but that she offered him only Tylenol because Zaunbrecher's additional requests had to be addressed by Nurse Practitioner Gautreau.  Finally, Richard noted that Zaunbrecher had decreased bowel sounds[2] and that she offered him Bisacodyl,

---

[1] The district court's factual conclusion that Richard did not examine Zaunbrecher on February 18 because Zaunbrecher was in court appears to be based on an erroneous view of the summary judgment record.  Based on the "Nursing Evaluation/Action Taken" section of Zaunbrecher's February 18 medical request form and on Richard's deposition testimony, it appears that Zaunbrecher was instead in court, and thus unable to be examined, on February 19.  This would accord with the defendants' representations that it was "standard procedure" to attempt to examine an inmate the morning after the inmate submitted a medical request form rather than the same day the form was submitted.  As we explain *infra*, our jurisdiction over this interlocutory appeal is limited to the purely legal question of whether the facts as found by the district court could show deliberate indifference.  *See Kinney v. Weaver*, 367 F.3d 337, 347–48 (5th Cir. 2004) (en banc).  Accordingly, for purposes of this appeal, we consider the facts as found by the district court without regard to conflicting evidence in the record.

[2] In her deposition, Richard further explained her February 21 examination of Zaunbrecher's bowel sounds and testified,

3

a stimulant laxative, to treat his constipation. Richard could not recall if she ever communicated Zaunbrecher's February 21 "toxins" complaint to Gautreau, but she testified that there was no way that she could have requested that Zaunbrecher see Gautreau sooner than Gautreau's next weekly visit to the Jail.

Gaudin took over Zaunbrecher's medical care after Richard's February 21 examination. On Friday, February 22, Zaunbrecher submitted a third medical request form requesting emergency treatment, in which he complained, "Stool softener not working, belly tight and tender[.] No bowel movements. I have started vomiting." Gaudin examined Zaunbrecher that afternoon. Her examination notes indicate that Zaunbrecher informed her, *inter alia*, that he had been constipated for three days; that his belly was hard and distended; that he had taken a laxative the night before and that morning; and that he requested additional Ibuprofen. Gaudin examined Zaunbrecher's abdomen for pain by pressing on it with her stethoscope, and Zaunbrecher did not grimace. Because the laxatives Zaunbrecher had taken did not appear to relieve his constipation, Gaudin called Gautreau and asked if she could give Zaunbrecher magnesium citrate, a more powerful laxative.

Gautreau authorized the prescription, and Zaunbrecher returned to Gaudin to take the magnesium citrate later in the afternoon of February 22. At that time, Zaunbrecher informed Gaudin that he had a bowel movement in his cell while waiting, which Gaudin testified "led her to believe that [Zaunbrecher's] constipation was clearing." Nevertheless, Gaudin ordered that

---

[I]n any type of assessment when anyone complains of constipation that's usually the first thing is you assess for bowel sounds with the stethoscope. And as long as you still have bowel sounds, whether they are decreased or you have them, you know your bowels are moving. . . . What you don't want is no bowel sounds.

4

Zaunbrecher take one-half of the magnesium citrate then and told him that she would leave the remaining half with the Jail's guards if Zaunbrecher needed it over the weekend. Shortly thereafter, Zaunbrecher returned to Gaudin and informed her that he had vomited. Gaudin testified that she attributed Zaunbrecher's vomiting to the poor taste of the magnesium citrate and that she instructed him to walk and to hydrate in an effort to increase his bowel movements. Gaudin did not examine Zaunbrecher again after her February 22 examination.

Gaudin missed a telephone call from Jail personnel about Zaunbrecher's condition on Saturday, February 23. She returned the call shortly thereafter, and Lieutenant Troy Mayers ("Mayers") informed her that Zaunbrecher was sick and vomiting.[3] Gaudin instructed Mayers that Zaunbrecher did not require hospitalization and to continue the course of medication for Zaunbrecher's stomach symptoms and to monitor him. Gaudin further indicated to Mayers that additional measures might be necessary only if "Zaunbrecher's condition appeared to worsen."

At approximately 2:00 p.m. on the afternoon of Sunday, February 24, Gaudin received another call from Mayers about Zaunbrecher's condition, during which Mayers told her that Zaunbrecher's blood pressure was low, his pulse rate was high, and he had complained of back pain. Without asking any additional questions about Zaunbrecher's condition, Gaudin instructed Mayers

---

[3] The district court identified a factual dispute regarding Gaudin's knowledge of Zaunbrecher's condition on February 23 and her directions for Zaunbrecher's treatment that day. Specifically, the district court concluded that Mayers' testimony was sufficient to create a genuine issue of material fact as to whether Mayers "updated Gaudin on the fact that Zaunbrecher appeared to be sick and vomiting," and whether, "without having an in-person assessment of Zaunbrecher, [Gaudin] said to simply continue the course of medication and to monitor him." *Zaunbrecher v. Wiley*, No. 13-CV-511-JWD-SCR, 2015 WL 1247008, at *7, 9 (M.D. La. Mar. 18, 2015). In light of the interlocutory nature of this appeal, we do not address the genuineness of this factual dispute; rather, we address only the materiality of this dispute as it relates to the deliberate indifference question. *See Kinney*, 367 F.3d at 347.

that Zaunbrecher "need[ed] to get to the hospital" and that an ambulance was not necessary.

Jail personnel transported Zaunbrecher to the hospital in a patrol car without using emergency flashers. Zaunbrecher was dead upon arrival at the hospital and subsequent CPR attempts were unsuccessful in reviving him. His time of death was 2:46 p.m. According to the district court, "[t]his means it took around forty-five minutes from the time Mayers called Gaudin to transfer Zaunbrecher from the . . . Jail to . . . [the] Hospital, which, according to GoogleMaps, was fifteen minutes away." *Zaunbrecher v. Wiley*, No. 13-CV-511-JWD-SCR, 2015 WL 1247008, at *7 (M.D. La. Mar. 18, 2015). Zaunbrecher's hospital records indicate that he arrived pulseless and covered in feculent emesis that had emanated from his nose and mouth. His autopsy report noted a history of hypertension, diabetes, and diverticulitis and stated that "[t]he primary finding at autopsy [was] evidence of acute peritonitis due to narrowing of the bowel and bowel obstruction due to diverticulitis."

Following his death, Zaunbrecher's representatives filed suit against, *inter alia*, Gaudin and Richard, alleging that Zaunbrecher was deprived of proper medical treatment in violation of the Eighth Amendment. Gaudin and Richard filed for summary judgment, asserting qualified immunity. The district court denied the motion, reasoning that a reasonable juror could determine that Gaudin's and Richard's conduct violated Zaunbrecher's constitutional right and that their conduct was objectively unreasonable in light of clearly established law. *Zaunbrecher*, 2015 WL 1247008, at *5, 9. Gaudin and Richard timely filed an interlocutory appeal.

## LEGAL STANDARDS

An interlocutory order denying qualified immunity is immediately appealable "to the extent that it turns on an issue of law." *Gobert v. Caldwell*, 463 F.3d 339, 344 (5th Cir. 2006) (internal quotation marks and citation

omitted). Our jurisdiction over such an appeal is limited. *See id.* We must accept the plaintiff's version of events as true, and we may review *de novo* "only whether the district court erred in assessing the legal significance of the conduct that [it] deemed sufficiently supported for purposes of summary judgment." *Kinney v. Weaver*, 367 F.3d 337, 348–49 (5th Cir. 2004) (en banc).

When a defendant invokes qualified immunity, the plaintiff bears the burden to show that: (1) "the defendants committed a constitutional violation under current law;" and (2) "the defendants' actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of." *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005). As to the first element—a constitutional violation—Zaunbrecher argues that Gaudin and Richard violated the Eighth Amendment by acting with deliberate indifference to his serious medical needs. *See Gobert*, 463 F.3d at 345. A prison official acts with deliberate indifference only if the official: (1) "knows that inmates face a substantial risk of serious bodily harm;" and (2) "disregards that risk by failing to take reasonable measures to abate it." *Id.* at 346 (quoting *Farmer v. Brennan*, 511 U.S. 825, 847 (1994)). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

We have described the deliberate indifference standard as "an extremely high standard to meet" and as requiring evidence of "egregious intentional conduct." *Gobert*, 463 F.3d at 346, 351 (internal quotation marks and citation omitted). We have also delineated a laundry list of acts and omissions that are insufficient to establish deliberate indifference: unsuccessful medical treatment; acts of negligence or malpractice; a misdiagnosis; "a prisoner's disagreement with his medical treatment, absent exceptional circumstances;" and "the decision whether to provide additional treatment," which we have

No. 15-30326

described as "a classic example of a matter for medical judgment." *Id.* (internal quotation marks and citations omitted); *see also Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). Rather, deliberate indifference requires that a plaintiff "submit evidence that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert*, 463 F.3d at 346 (internal quotation marks omitted).

## DISCUSSION

Zaunbrecher argues, and the district court agreed, that a reasonable juror could determine that Richard's and Gaudin's conduct could amount to a violation of his Eighth Amendment right to adequate medical care. *See Zaunbrecher*, 2015 WL 1247008, at *7, 9. The sole question we need answer on appeal is whether the conduct of Richard and Gaudin—that the district court found sufficiently supported by the summary judgment record—could establish deliberate indifference under the extremely high standard articulated in our case law. We conclude that it cannot.

I.

We begin by analyzing Richard's conduct in light of our deliberate indifference principles. We need not pause to consider the first prong of the deliberate indifference analysis: whether Richard was aware of "a substantial risk of serious bodily harm" to Zaunbrecher. *Gobert*, 463 F.3d at 346. Even assuming that Richard was aware of such a risk—as evidenced by Zaunbrecher's complained-of symptoms—Zaunbrecher cannot show that Richard disregarded that risk by refusing to treat him, ignoring his complaints, intentionally mistreating him, or engaging in any similar conduct that demonstrated a wanton disregard for his medical needs. *See id.*

8

Zaunbrecher first complained to Richard on February 18, informing her that he was experiencing severe back pain, requesting that his Ibuprofen pain medication be refilled, and seeking medical assistance to find the origin of his pain.  As the district court concluded, Richard did not treat Zaunbrecher that day because Zaunbrecher was away from the facility for a court appearance, but Richard addressed his complaints the next day, February 19, by refilling his Ibuprofen pain medication.  No reasonable juror could conclude that Richard was deliberately indifferent to Zaunbrecher's request for pain treatment where his absence from the Jail prevented him from receiving that treatment, and he received medication for his pain one day later.  *See Burton v. Owens*, 511 F. App'x 385, 389 (5th Cir. 2013) (per curiam) (collecting cases for the proposition that the "[Fifth] Circuit and others have found that a prison official who refused to provide an inmate with *any* pain treatment, and thus ignored the inmate's complaints of pain, may have acted with deliberate indifference").  Zaunbrecher argues that it would have been more prudent for Richard to follow-up with him on February 19 about the origin of his pain, as opposed to merely treating his pain with medication.  Richard's failure to take such an additional pain management measure does not amount to deliberate indifference.  *See, e.g., Gobert*, 463 F.3d at 346.

Zaunbrecher complained to Richard again on February 20, noting, "Severe back pain/spasms – Continuous for 4 days.  No relief!"  Richard examined him the next day, February 21, at which time Zaunbrecher complained of constipation, stated that his back pain felt like "toxins," and requested blood work and an increase to his pain medication.  The record is clear that Richard treated, or minimally, attempted to treat each of Zaunbrecher's February 20 and 21 complaints.  She was unable to offer Zaunbrecher certain treatment—bloodwork and increased pain medication—

9

before he saw Gautreau,[4] so Richard offered Zaunbrecher Tylenol to relieve his pain.    Richard physically examined Zaunbrecher as to his complaint of constipation and noted decreased bowel sounds.    According to her medical judgment, Zaunbrecher's bowel sounds were not cause for immediate concern because low bowel sounds meant that Zaunbrecher's bowels were still moving. *See id.* at 350 (reversing the denial of qualified immunity where a prison official's examination provided "no reason to conclude that [a prisoner] . . . was in need of additional medical care beyond the then current treatment"). Richard's bowel-sound assessment and her decision to treat Zaunbrecher with a laxative might have been wrong, particularly now that we have insight as to the potential cause of Zaunbrecher's death.    However, such a misdiagnosis does not show deliberate indifference, and such hindsight would only distort our deliberate indifference analysis.    *See Domino*, 239 F.3d at 756 ("It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference."); *see also Wagner v. Bay City*, 227 F.3d 316, 325 (5th Cir. 2000) (reversing the denial of qualified immunity where the district court's deliberate indifference "observations [were] made through the lens of 20/20 hindsight").

At no point did Richard refuse to treat Zaunbrecher or ignore his complaints.    *See Gobert*, 463 F.3d at 346.    Richard's conduct similarly does not

---

[4] The district court concluded that Richard's failure to notify Gautreau of Zaunbrecher's February 21 "toxins" complaint could show deliberate indifference. *Zaunbrecher*, 2015 WL 1247008, at *5.    Under these circumstances, we disagree.    It is clear that Richard took what she perceived to be reasonable steps to treat Zaunbrecher and abate the risk of harm posed by his toxins complaint, to wit, offering him Tylenol for his pain, examining his bowel sounds, and offering him a laxative for constipation.    Moreover, Richard's uncontroverted testimony establishes that there was no way that she could have further abated that risk by scheduling an earlier visit with Gautreau. *Cf. Easter v. Powell*, 467 F.3d 459, 463–64 (5th Cir. 2006) (per curiam) (affirming the denial of qualified immunity where "[t]here [was] no indication in the record that [a prison official] did not have access to [a prescription] or that she was unable to offer [a prisoner] any other treatment options").

"evince a wanton disregard for any [of Zaunbrecher's] serious medical needs." *Id.* A trier of fact might find that several of Richard's actions—*e.g.*, her failure to read Zaunbrecher's medical request forms before treating him,[5] her failure to follow-up with Zaunbrecher, her failure to instruct the Jail's guards to monitor him, or her failure to notify Gautreau of Zaunbrecher's symptoms—could amount to ill-advised decisions not to provide additional treatment or a failure to adhere to an appropriate standard of care. Yet, such acts are not the type of "egregious intentional conduct" that rises to the level of deliberate indifference. *See id.* at 351.

The undisputed facts show that Richard took reasonable steps to abate the risk of harm posed by Zaunbrecher's complaints. Thus, Zaunbrecher cannot show that Richard acted with deliberate indifference in violation of the Eighth Amendment, and Richard is entitled to qualified immunity.

## II.

We next turn to Gaudin's conduct, where the same principles inform our analysis. As with Richard, we need not pause to consider the first prong of the deliberate indifference analysis. Even assuming that Gaudin was aware of a substantial risk of harm to Zaunbrecher, the record does not show that Gaudin disregarded that risk by intentionally ignoring Zaunbrecher's medical needs.

Zaunbrecher first complained to Gaudin on February 22, writing, "Stool softener not working, belly tight and tender[.] No bowel movements. I have started vomiting." Gaudin examined him that day, and her examination notes

---

[5] For example, Richard testified that it was her standard practice not to read an inmate's medical request form because inmates often forget what they write or complain of different problems by the time she examines them. She further testified that she found it more beneficial to give inmates "a chance to tell [her] what's going on right now" during the examination. Under these circumstances, this does not show deliberate indifference. Richard did not neglect to read Zaunbrecher's complaints for the purpose of refusing to treat him or ignoring his complaints. Rather, her testimony and examination notes reflect that she did so to provide Zaunbrecher with what she perceived to be a broader range of treatment.

indicate that Zaunbrecher principally complained that he had been constipated for three days despite taking laxatives and that his belly was hard and distended. The record does not reflect that Gaudin ignored these complaints.

Gaudin examined Zaunbrecher's abdomen by pressing on it with a stethoscope, and Zaunbrecher did not exhibit pain. Because the laxatives Zaunbrecher had taken did not appear to relieve his constipation, Gaudin sought to administer a more powerful prescription laxative. While Zaunbrecher waited for the prescription, he had a bowel movement in his cell, which led Gaudin to believe that Zaunbrecher's constipation was clearing. Even then, Gaudin proceeded to treat Zaunbrecher with one-half of the more powerful laxative and instructing him to hydrate and exercise to cause more bowel movements. She further instructed him that she would leave the remaining half of the laxative with the Jail's guards should Zaunbrecher need further medication over the February 23-24 weekend. True, shortly after Zaunbrecher took the magnesium citrate, he returned to Gaudin and informed her that he had vomited when he returned to his cell. However, Gaudin's testimony indicates that she attributed this reaction to the poor taste of the magnesium citrate, and nothing in the record suggests that this was anything more than a misdiagnosis. *See Domino*, 239 F.3d at 756 (holding that a prison official's misdiagnosis was insufficient to show deliberate indifference).

Each of Gaudin's February 22 actions constitute reasonable steps to abate the risk of harm evidenced by Zaunbrecher's complaints, and nothing about Gaudin's treatment suggests an intent to ignore Zaunbrecher's complaints or a refusal to treat him.[6] *See Gobert*, 463 F.3d at 346. Under these

---

[6] Construing the facts in Zaunbrecher's favor, the district court also concluded that certain February 22 and 24 statements made by Gaudin could show deliberate indifference. *See Zaunbrecher*, 2015 WL 1247008, at *9. On February 22, "Gaudin told the inmate Raymond Gross that Zaunbrecher 'did not need medical attention and was looking for pain medication,'" and, "on February 24, . . . 'Nurse Gaudin [told Mayers] that Zaunbrecher could

circumstances, Gaudin's February 22 treatment cannot show deliberate indifference.[7]

Gaudin's next contact with Zaunbrecher came on February 23, when the Jail's guards contacted her by telephone and informed her that Zaunbrecher's condition had not improved. As previously mentioned, the district court identified a factual dispute with regard to the extent of Gaudin's knowledge of Zaunbrecher's condition on February 23 and her corresponding treatment instructions that day. *Zaunbrecher*, 2015 WL 1247008, at *7, 9. We conclude that this factual dispute is immaterial to the deliberate indifference question at hand. *See Kinney*, 367 F.3d at 347. Even assuming, as did the district court, that Gaudin was aware that Zaunbrecher was sick and vomiting and that she, without conducting an in-person examination, instructed Mayers to monitor Zaunbrecher, to continue treating him with the prescription laxative, and to seek additional measures only if his condition worsened, this does not show deliberate indifference. *See Estate of Henson v. Krajca*, 440 F. App'x 341, 344 (5th Cir. 2011) (citing *Gobert*, 463 F.3d at 349, and holding that a prison official's continuation of prescribed breathing treatments and instructions to monitor a prisoner was sufficient to show that the official did not purposefully neglect the prisoner's medical needs). The reality is that Gaudin's instructions that Zaunbrecher be treated with the laxative and monitored on February 23

---

wait for treatment until the next day.'" *Id.* (alteration in original). Based on the circumstances here, neither of these statements shows that Gaudin ignored Zaunbrecher's medical needs. Regardless of what Gaudin told Gross or Mayers, she proceeded to treat Zaunbrecher on February 22 with an in-person examination, a prescription laxative, and care instructions and on February 24 with a recommendation that he be hospitalized.

[7] Nor can Gaudin's February 22 failure to give the Jail's guards weekend care instructions for Zaunbrecher—*e.g.*, to monitor him or to contact her if his condition worsened—show deliberate indifference on these facts. Following her February 22 examination, Gaudin perceived Zaunbrecher's condition to be improving, as evidenced by his bowel movement, and nothing suggests that Gaudin had reason to conclude that Zaunbrecher was in need of additional care beyond the more powerful laxative and care instructions provided. *See Gobert*, 463 F.3d at 350.

show that she did not ignore Zaunbrecher's condition or refuse to treat him. *See id.* Her decision to offer these treatment instructions without an in-person examination speaks to whether her treatment conformed with an optimal standard of care, not whether she consciously ignored Zaunbrecher's medical needs. *See id.* at 344–45; *see also Gobert*, 463 F.3d at 349 (stating that "deliberate indifference exists wholly independent of an optimal standard of care").

Gaudin's final contact with Zaunbrecher occurred on February 24, when the Jail's guards again contacted her and informed her that Zaunbrecher's vital signs were abnormal. Zaunbrecher cannot show that Gaudin's response to his February 24 vital signs amounts to deliberate indifference. *See Henson*, 440 F. App'x at 345–46 (discussing whether a prison official was deliberately indifferent to an inmate's elevated vital signs). Immediately upon receiving notice of Zaunbrecher's abnormal vital signs, Gaudin ordered his transport to the hospital. *Cf. id.* at 346 (suggesting that even a prison official's "failure to order [a prisoner's] transport to the hospital immediately after receiving notice of his elevated vital signs is in the category of malpractice, not deliberate indifference"). Zaunbrecher argues that it would have been more prudent for Gaudin to inquire further into his condition before instructing the Jail's guards that an ambulance was not necessary. The failure to conduct a more careful inquiry does not show that Gaudin ignored Zaunbrecher's condition before recommending hospitalization, and there is no evidence in the record that Zaunbrecher's vital signs constituted dangerously high readings or required a particular mode of transportation to the hospital. *See id.* at 345–46.

Gaudin's actions do not "clearly evince a wanton disregard for any [of Zaunbrecher's] serious medical needs." *Gobert*, 463 F.3d at 346. Accordingly,

14

No. 15-30326

Zaunbrecher cannot show that Gaudin violated his constitutional right to medical care, and Gaudin is entitled to qualified immunity.[8]

## CONCLUSION

We are convinced that Richard's and Gaudin's actions do not rise to the level of egregious intentional conduct that our extremely high deliberate indifference standard requires. Because this conclusion means that the district court erred in denying qualified immunity to Richard and Gaudin, we REVERSE and REMAND for further proceedings consistent with this opinion.

---

[8] Before concluding, we address a late-raised argument made by Zaunbrecher's counsel at oral argument—that Richard's and Gaudin's conduct shows "incremental deliberate indifference." Even assuming this novel argument presents a viable deliberate indifference framework, we have carefully reviewed the record, and we conclude that there is no "increment" during which Richard or Gaudin was deliberately indifferent to Zaunbrecher's serious medical needs.