# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 31, 2013

No. 12-30143

Lyle W. Cayce
Clerk

SYLVESTER MARTIN,

Plaintiff-Appellee

v.

RONNIE SEAL, Lieutenant; BRUCE FORBES, Emergency Medical
Technician; BRUCE STEWART, Sergeant; WENDY SEAL, Licensed Practical
Nurse; DENNIS LARAVIA, Medical Doctor; KIMBERLY WARNER, Licensed
Clinical Social Worker,

Defendants-Appellants

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:11–CV–726

Before HIGGINBOTHAM, CLEMENT, and HAYNES, Circuit Judges.

PER CURIAM:[*]

## I. FACTUAL BACKGROUND

Plaintiff-Appellee Sylvester Martin ("Martin") is an inmate at the Rayburn
Correctional Center ("RCC") in Angie, Louisiana. Defendants-Appellants
(collectively "Appellants") are employees of the Louisiana Department of
Corrections. Dr. Dennis Laravia, Emergency Medical Technician ("EMT") Bruce

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should
not be published and is not precedent except under the limited circumstances set forth in
5TH CIR. R. 47.5.4.

No. 12-30143

Forbes, EMT Bruce Stewart, Nurse Wendy Seal, and Licensed Clinical Social Worker ("LCSW") Kimberly Warner are medical personnel who treated Martin on at least one occasion. Lt. Ronnie Seal is a correctional officer at RCC.

On December 14, 2010, Martin started to act erratically upon returning to his cell from a hearing in court. After Martin yelled, "I'm suicidal and I'm going to kill myself," Lt. Ronnie Seal contacted Kimberly Warner in the mental health department, who recommended that Martin be placed on "standard suicide watch" against his will. On suicide watch, Martin remained inside of his cell and was not restrained in any way. Shortly after being placed on suicide watch, Martin began to rack down (violently shake the cell bars) and jump on his bed.[1] Prison guards ordered Martin to stop several times, but Martin refused and stated that he was "not living in [that] cell or [that] tier."

Lt. Seal called the prison's medical department and asked if it would be safe for him to use non-toxic deep freeze chemical spray to restrain Martin. Lt. Seal spoke with EMT Bruce Forbes, who then contacted Dr. Dennis Laravia, who authorized Lt. Seal to use chemical spray against Martin. When Martin began to rack down and jump on his bed again, Lt. Seal warned him to stop or be subjected to the use of deep freeze chemical spray. Martin persisted in his behavior and Lt. Seal applied chemical spray to Martin's upper torso. Once Martin had been subdued, Lt. Seal and two other guards entered his cell,

---

[1] The parties dispute whether Martin actually began to jump on his bed and rack down before or after the initial chemical spraying. Martin claims that he was sprayed twice, without warning, prior to Lt. Seal's receipt of permission from Dr. Laravia. Although the district court did not address this particular issue in the opinion below, Martin acknowledges that, at the very least, he repeatedly refused to follow the orders of Kimberly Warner and Lt. Seal to undress pursuant to standard suicide watch procedures prior to being sprayed with chemicals.

No. 12-30143

restrained him, and brought him to the lobby to be examined by EMT Bruce Forbes. Forbes examined Martin, determined that he was fine, and offered him a shower, after which he was escorted back to his cell.

Once Martin returned to his cell, he began to rack down and jump on the bed. Lt. Seal again advised Martin that he would be sprayed with deep freeze if he continued to act in this manner. Martin ignored Lt. Seal's warnings and was sprayed a second time. When Martin calmed down, Lt. Seal and two guards brought him out of his cell to be examined by Nurse Wendy Seal. Nurse Seal examined Martin, found no apparent injuries, and referred him to mental health after he threatened to continue his bad behavior despite knowing that he would be sprayed again. Martin then took a second shower and was returned to his cell.[2] The parties dispute whether Martin suffered any asthma-related problems as a result of Lt. Seal's use of chemical spray to restrain him. While Martin contends that he experienced trouble breathing after being sprayed, the prison records and video footage of the two recorded incidents suggest that any physical harm Martin suffered was temporary and *de minimis*. Furthermore, in spite of Martin's claim that he suffered lasting injuries (aggravated asthma symptoms and back pain) as a result of the sprayings, prison records demonstrate that, in the months following the incident, Martin was evaluated by medical personnel who determined that he was not injured and did not need additional treatment.

Martin brought suit against Appellants under 42 U.S.C. § 1983, alleging violations of the Eighth Amendment and Louisiana state law. Appellants moved

---

[2] Two of the incidents where Martin was restrained using chemical spray and then examined by EMT Forbes and Nurse Seal were recorded on the prison's surveillance camera. Martin, however, alleges that Lt. Seal sprayed him at least once before setting up the camera, while Lt. Seal maintains that the camera began recording prior to the first spraying.

No. 12-30143

for summary judgment on the basis of qualified immunity. The district court denied the motion for summary judgment as to Martin's claims of excessive force and deliberate indifference, ruling that Appellants were not entitled to qualified immunity. Appellants timely appealed.

## II. STANDARD OF REVIEW

Under the collateral order doctrine, this Court has jurisdiction to review "a district court's order denying qualified immunity, to the extent that it turns on an issue of law." *Gobert v. Caldwell*, 463 F.3d 339, 344 (5th Cir. 2006) (quoting *Behrens v. Pelletier*, 516 U.S. 299, 311 (1996)) (internal quotation marks omitted). On interlocutory appeal, this Court "lacks 'the power to review the district court's decision that a genuine factual dispute exists,'" and instead can "consider 'only whether the district court erred in assessing the legal significance of the conduct that the district court deemed sufficiently supported for purposes of summary judgment.'" *Id.* at 345 (quoting *Kinney v. Weaver*, 367 F.3d 337, 347 (5th Cir. 2004) (en banc)). Thus, taking the plaintiff's version of the facts as true, this Court reviews de novo "only the purely legal question of whether the district court erred in concluding as a matter of law that officials are not entitled to qualified immunity on that given set of facts." *Id.* (citation, internal quotation marks, and alteration omitted).

## III. ANALYSIS

All three issues on appeal concern the district court's denial of qualified immunity to Appellants on Martin's Eighth Amendment claims for excessive force and deliberate indifference. This Court determines whether an official is

4

entitled to qualified immunity by asking (1) "whether the facts alleged, taken in the light most favorable to the party asserting the injury, show that the [official's] conduct violated a constitutional right," and (2) "if the allegations could make out a constitutional violation, . . . whether the right [violated] was clearly established." *Mace v. City of Palestine*, 333 F.3d 621, 623–24 (5th Cir. 2003) (citation and internal quotation marks omitted). We exercise "discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first," *Lockett v. City of New Orleans*, 607 F.3d 992, 998 (5th Cir. 2010), and here we find it appropriate to assess initially whether Appellants violated Martin's Eighth Amendment rights.[3] The district court failed to properly evaluate whether Martin alleged a claim for excessive force under applicable Fifth Circuit precedent, and erroneously concluded that Appellants exhibited deliberate indifference to Martin's serious medical needs. As a result, we reverse the district court's denial of summary judgment and remand for additional consideration on the claim of excessive force, and we render summary judgment in favor of Appellants on the claims of deliberate indifference.

A.    *Excessive Force*

The "core judicial inquiry" into a plaintiff's claim of excessive force under the Eighth Amendment is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). We look to five nonexclusive factors to make this determination: "1. the extent of the injury suffered; 2. the need for the application of force; 3. the relationship between this need and the amount of

---

[3] As our analyses of Martin's claims under the first prong are dispositive, we need not reach the question of whether Martin's allegedly violated constitutional rights were clearly established at the time of the incident.

No. 12-30143

force used; 4. the threat reasonably perceived by the responsible officials; and 5. any efforts made to temper the severity of a forceful response." *Baldwin v. Stalder*, 137 F.3d 836, 839 (5th Cir. 1998) (citation omitted). In evaluating these factors (the "*Hudson* factors"), this Court views the facts and makes inferences in the manner most favorable to the non-moving party. *See Petta v. Rivera*, 143 F.3d 895, 902–03 (5th Cir. 1998).

Appellants claim that the district court erred by not considering all of the *Hudson* factors in its denial of qualified immunity. While the district court evaluated the need for Lt. Seal's application of chemical spray to detain Martin, it did not expressly consider any of the other factors that, under *Hudson*, could bear on the court's finding of excessive force. More specifically, the district court did not assess the extent of the injury suffered by Martin, the relationship between the need for force and the type of force actually used (chemical spray), the threat perceived by Lt. Seal and the other officers, or the efforts made by Lt. Seal and the medical personnel to temper the severity of the force used. While there may be a set of facts under which a single *Hudson* factor is so compelling as to overshadow the others and alone warrant a finding of excessive force, that is not the case here. In other words, although the district court was not required to conduct an extensive analysis of each *Hudson* factor, its failure to even acknowledge any of the other four factors when Appellants clearly pleaded facts relevant to those issues resulted in a decision that unjustifiably prioritizes one *Hudson* factor—the alleged need for force against Martin—above all others.

Both parties have set forth several additional facts not mentioned in the opinion below that should have been considered in the district court's qualified immunity analysis. First, both Appellants and Martin offer evidence regarding

6

the extent of Martin's injuries and the amount of force used by Lt. Seal. Appellants contend that Martin suffered only *de minimis* injuries after the chemical sprayings. The district court similarly noted that "it is questionable whether plaintiff experienced a 'serious medical need' as a result of the spraying. The medical records indicate that he did not, and the video records show that plaintiff was back on his feet and quite hale and hearty soon after the sprayings." While Martin need not show that his injuries were significant, *see Wilkins v. Gaddy*, 130 S. Ct. 1175, 1178 (2010), "the extent of injury suffered by an inmate is one factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation," *Hudson,* 503 U.S. at 7 (citation and internal quotation marks omitted); *see also Wilkins*, 130 S. Ct. at 1178 ("The extent of the injury may also provide some indication of the amount of force applied.").

On the other hand, Martin pleaded facts suggesting that the severity of his injuries (or lack thereof) did not accurately reflect the amount of force used. For example, Martin offered prison records showing that, although Lt. Seal claimed to have only sprayed him twice, the can of chemical spray weighed less than it should have after only two uses. He also offers the affidavit of another prisoner, Richard Lay, who corroborates Martin's claim that Lt. Seal sprayed him a total of three times.

The district court also did not address Appellants' arguments regarding the relationship between the need for chemical spray and the amount of spray actually used. Even taking as true Martin's testimony alleging that Lt. Seal sprayed him in retaliation for his previous assault of another correctional

No. 12-30143

officer,[4] the district court did not acknowledge that, prior to being sprayed at all, Martin ignored multiple orders to remove his clothes after being put on suicide watch, and later ignored orders to stop racking his cell bars and jumping on his bed. In his brief, Martin admits that he resisted these orders. By glossing over these details, the district court may have missed facts relevant to the consideration of whether Lt. Seal used excessive force given the progression of events.

Finally, the district court did not mention the efforts of Appellants to temper the severity of the chemical sprayings by providing Martin with medical attention and offering him a shower after each incident. Lt. Seal not only warned Martin that he would be sprayed with a chemical agent if he did not cease his disruptive behavior, but also arranged for the provision of medical care immediately after each spraying. Under *Hudson*, such actions are relevant to a determination of whether the force used was appropriate under the circumstances or an excessive reaction to a perceived threat.

Although none of these aforementioned factors is alone dispositive here, the district court erred in failing to acknowledge that both parties proffered facts relevant to the broader *Hudson* analysis. *See, e.g., Crawford v. Lynaugh*, No. 93-2010, 1993 WL 391367, at *3 (5th Cir. Sept. 20, 1993) (unpublished) ("The extent of the injuries suffered is but one factor to be considered in determining the validity of an excessive force claim. The district court therefore erred in viewing this factor as dispositive, and abused its discretion in dismissing [prisoner's] claim on this ground."). We are not responsible for weighing the

---

[4] On the date of this incident, Martin pleaded guilty to battery on another correctional officer. As a result, Martin alleged that Lt. Seal threatened to harm him if he ever became involved in another physical confrontation with an officer.

facts in a qualified immunity dispute and instead "may consider only whether the district court erred in assessing the legal significance of the conduct that the district court deemed sufficiently supported for purposes of summary judgment." *Gobert*, 463 F.3d at 345 (citation and internal quotation marks omitted).  Once Martin alleged an injury due to Lt. Seal's use of excessive force, the district court was required to determine whether that claim was constitutionally cognizable—a determination that should have involved consideration of the applicable *Hudson* factors.  *See Jones v. Primrose*, 176 F. App'x 518, 519 (5th Cir. 2006) (unpublished) ("Whether [an] allegation of injury is constitutionally cognizable requires consideration of the *Hudson* factors.") (citing *Baldwin*, 137 F.3d at 838–39).

The district court failed to consider material facts relevant to Martin's claim of excessive force, thus resulting in a denial of qualified immunity on the sole basis that Appellants failed to show a need for their use of force against Martin.  Although Martin may have pleaded facts sufficient to withstand Appellants' motion for summary judgment, we decline to affirm the district court's decision without further consideration of these other issues.  *See Crawford*, 1993 WL 391367, at *3 (remanding the case to the district court to consider all of the *Hudson* factors in determining whether the defendants used excessive force).  In the absence of a more thorough *Hudson* analysis, the district court should not have determined that Lt. Seal violated Martin's Eighth Amendment rights and thus should not have denied Appellants' request for qualified immunity.

### B.   *Deliberate Indifference to Martin's Asthma*

The second issue on appeal is whether Appellants acted with deliberate

indifference to Martin's asthma by authorizing the use of a chemical spray to restrain him. This Court has held that a prison official acts with deliberate indifference in violation of the Eighth Amendment if (1) there was a "substantial risk of serious harm" to the plaintiff, and (2) "prison officials acted or failed to act with deliberate indifference to that risk." *Gobert*, 463 F.3d at 345–46. This standard requires the plaintiff to show that the prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001) (citation and quotation marks omitted). "Deliberate indifference is an extremely high standard to meet." *Id.*

The district court determined that Appellants were not entitled to qualified immunity because the purported absence of complete medical records created disputed issues of material fact as to whether Martin's asthma constituted a serious medical need.[5] This holding, however, disposes of Appellants' qualified immunity defense without assessing the second prong of the analysis, whether Appellants acted with deliberate indifference to Martin's asthma. Martin, not Appellants, had the burden to plead facts sufficient to show deliberate indifference and overcome a qualified immunity defense. *See Gobert*, 463 F.3d at 345 n.14 (noting that once a qualified immunity defense has been raised, "plaintiff has the burden to rebut the qualified immunity defense by establishing that the official's allegedly wrongful conduct violated clearly

---

[5] Appellants deny Martin's allegation and the district court's finding that the medical records provided by RCC were incomplete. The record on appeal demonstrates that, at a minimum, several pages of Martin's medical records were produced, including the reports related to the use of chemical spray during the incidents at issue.

established law." (citation and quotation marks omitted)).  The district court relieved Martin of this burden and effectively shifted it onto Appellants by denying them qualified immunity based solely on the purported inadequacy of Martin's medical records.

The fact that Martin has asthma—which Appellants do not dispute—does not alone present an issue of material fact sufficient to overcome a defense of qualified immunity.  Martin not only needed to prove "objective exposure to a substantial risk of serious harm," *Gobert*, 463 F.3d at 345, but also that the prison officials actively disregarded that risk, *Adames v. Perez*, 331 F.3d 508, 512 (5th Cir. 2003).  Thus, even assuming that the RCC withheld parts of Martin's medical records showing that Martin had severe asthma, Martin's claim for deliberate indifference still fails since he did not demonstrate that Appellants had the requisite mens rea; that they "were actually aware of the risk [of using chemical spray on an asthmatic inmate], yet consciously disregarded it." *Lawson v. Dallas Cnty.*, 286 F.3d 257, 262 (5th Cir. 2002).  Martin's bare assertion that even "a layperson would understand and know from his or her own life experiences that spraying an asthmatic with chemical spray will cause serious pain and suffering" does not suffice to show deliberate indifference.  *See Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002) ("Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial.").

Martin's contention that Dr. Laravia had previously told Lt. Seal that he could not use chemical agents against Martin is insufficient to show deliberate indifference.  At most, this would show that Dr. Laravia "failed to act

reasonably," which is inadequate to support an inference of deliberate indifference. *See Domino*, 239 F.3d at 756 ("[T]he 'failure to alleviate a significant risk that [a prison official] should have perceived, but did not' is insufficient to show deliberate indifference." (quoting *Farmer v. Brennan*, 511 U.S. 825, 838 (1994))).

Appellants' authorization of the use of chemical spray against Martin was a medical judgment that does not rise to the level of "wanton disregard for [Martin's] serious medical needs." *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). At best, Martin suggests that Appellants decided to use chemical spray after concluding that it would not cause a severe asthma attack or otherwise threaten Martin's health. Deliberate indifference, we have previously held, "exists wholly independent of an optimal standard of care." *Gobert*, 463 F.3d at 349. While perhaps negligent or even an exercise of poor judgment, Appellants' conduct does not constitute deliberate indifference. *See Farmer*, 511 U.S. at 835 ("[D]eliberate indifference describes a state of mind more blameworthy than negligence.").

Moreover, Appellants have alleged facts (uncontroverted by Martin and supported by video footage) that, after each round of chemical treatment, they examined Martin, determined that he was not injured, and offered him a shower. Such actions counter Martin's allegations of deliberate indifference. *See, e.g., Gobert*, 463 F.3d at 346 n.24 ("Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference." (quoting *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995) (internal quotation marks omitted)). While Martin claims that, in conducting one of these examinations, EMT Forbes intentionally touched him in a manner

that Forbes knew would inflict pain instead of actually treating him, this conduct does not rise to the level of a constitutional violation under the Eighth Amendment. *See Gobert*, 463 F.3d at 346; *see also Broussard v. Nelson*, 12-30677, 2012 WL 6605769, at *1 (5th Cir. Dec. 19, 2012) (unpublished) *(*"[Plaintiff] characterizes [medical personnel's] examin[ation of] him . . . as 'fake' and 'lame', but his dissatisfaction with that examination is an insufficient basis for an Eighth Amendment claim."). As Martin has failed to satisfy the "stringent standard" for showing deliberate indifference to his asthma, *see Brown v. Bryan Cnty.*, 219 F.3d 450, 457 (5th Cir. 2000), we reverse the district court's denial of summary judgment on this ground.

### C.    *Deliberate Indifference to Martin's Other Medical Needs*

Martin's third and final claim alleges that Appellants acted with deliberate indifference to his "various other medical conditions." Martin's briefing on this issue is woefully inadequate and does not even specify with any amount of detail which "various other medical conditions" were ignored. Essentially, Martin suggests that the use of chemical spray in the incident discussed above resulted in a "serious medical need" that was ignored by medical personnel for several months. The district court declined to grant Appellants qualified immunity because the medical records provided by Martin were "insufficient . . . to assess these claims." Martin has not alleged that Appellants entirely failed to provide him with medical care after the sprayings, as such a contention would be clearly contradicted by video footage. Instead, he appears to assert that Appellants violated the Eighth Amendment by refusing to provide him with additional medical treatment in the months after the incident. Appellants' refusal to provide additional treatment, without more, constitutes

"a classic example of a matter for medical judgment." *Gobert*, 463 F.3d at 346 (quoting *Domino*, 239 F.3d at 756) (internal quotation marks omitted). As such, it takes on the appearance of a claim for "[u]nsuccessful medical treatment, acts of negligence, or medical malpractice" that we have previously held "do not constitute deliberate indifference." *Id.*

For the same reasons discussed in the previous section, the district court erred in relieving Martin of the burden of pleading facts sufficient to show that Appellants exhibited deliberate indifference to his other medical needs, particularly in light of video footage and statements from Appellants showing the provision of medical care to Martin after each of the chemical sprayings. Moreover, Martin has not identified with any specificity the ailments or symptoms (aside from asthma and a vague reference to back pain) he claims were caused by Appellants' alleged deliberate indifference. Accordingly, we reverse the district court's denial of qualified immunity on Martin's claim of deliberate indifference to his other medical needs.

## IV. CONCLUSION

The district court erred in denying Appellants' motion for summary judgment on the issue of excessive force without an adequate evaluation of the five *Hudson* factors, particularly since some of the unaddressed facts may have had implications for that claim. Additionally, the district court erred in denying Appellants' motion for summary judgment on the claims of deliberate indifference, since Martin entirely failed to plead facts that "rise[] to the level of egregious intentional conduct required to satisfy the exacting deliberate indifference standard." *Gobert*, 463 F.3d at 351. As a result, we reverse the

14

No. 12-30143

district court's denial of summary judgment, remand for reconsideration of Martin's excessive force claim, and render summary judgment in favor of Appellants on the deliberate indifference claims.