# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

**September 24, 2007**

Charles R. Fulbruge III
Clerk

No. 05-31003
Summary Calendar

RODNEY B. JONES

Plaintiff-Appellant

V.

PAM HEARN; KAREN WHITE

Defendants-Appellees

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 5:04-CV-1565

Before REAVLEY, SMITH, and BARKSDALE, Circuit Judges.

PER CURIAM:[*]

Rodney Jones, Louisiana prisoner # 305669, sued defendants Dr. Pam Hearn and nurse Karen White, under 42 U.S.C. § 1983, for allegedly infringing his Eighth and Fourteenth amendment rights. Jones alleged that the defendants deliberately misdiagnosed him with tuberculosis and then forced him to take prophylactic medication, which resulted in him suffering serious side effects. Hearn and White filed a motion for summary judgment,

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

arguing that qualified immunity shielded them from suit. The district court granted the motion. For the reasons that follow, we affirm the grant of summary judgment in favor of Hearn and reverse and remand the grant of summary judgment in favor of White solely on the issue of Jones's Eighth Amendment claim.

## I.    Background

### A.    Louisiana's prison tuberculosis prevention plan

Tuberculosis is a highly contagious and potentially fatal disease that can spread rapidly in a prison. To combat the devastating impact of a tuberculosis outbreak, the Louisiana Department of Public Safety and Corrections has adopted a comprehensive health care policy that requires the regular testing of prisoners for tuberculosis. To determine whether a prisoner has the disease, health officials administer a so-called PPD test. The test requires health officials to expose each inmate to tuberculosis germ by injecting them with a tiny amount of purified protein derivative (or "PPD"). After 48 to 72 hours has passed, the injection site is inspected for induration. Waiting at least 48 hours is important because a patient can have an allergic reaction to the test, resulting in a false positive. An induration of "10 mm" or higher is considered a "positive reaction." Such a reaction does not necessarily mean that the prisoner has tuberculosis. Instead, approximately ten percent of people with a positive reaction to the PPD test develop tuberculosis if they are not treated.

Because of the proven risk and danger of tuberculosis spreading in incarcerated populations, prisoners with positive reactions are prescribed prophylactic medication. If the medication is refused, the prisoner must sign a Refusal to Accept Medical Care form. The inmate will then be observed closely for evidence of future active disease. That observation may be done in a lockdown setting or in medical isolation.

B.    Jones's tuberculosis test

Jones's tuberculosis testing odyssey began on the morning of May 9, 2004, when a prison nurse (not defendant White) attempted to administer the PPD test.  Jones claims he had a bad prior experience with this particular nurse when she had taken his blood and so he told her he would not allow her to prick him again with a needle.  Jones told her he would be willing to take the test with a different nurse.  On May 10, at approximately 12:30 a.m., another nurse came in to inject the PPD.  Jones had no objection and the injection was given.

On May 11, at about 8 a.m.—approximately 30 hours after Jones had been injected with the PPD—nurse White arrived at Jones's cell and said she was there to check to see if there was any induration.  Jones explained to White that the requisite 48 hours had not passed yet because he had not been injected on the morning of May 9 like the other prisoners.  According to Jones, White then responded that it was Jones's fault he was not injected at the earlier time and that "this is not Burger King"—presumably in reference to the restaurant's slogan that you can "have it your way."  White then concluded that Jones had an induration of 20 mm and "exclaimed" that he was "positive."  Jones responded that he was not positive.  Jones stated that he always had an allergic reaction to the injection and that it would soon pass.  According to Jones, White ignored his explanation and told him he would have to get on the prophylactic medication.

Several days later, prison guards approached Jones's cell and ordered him to take the medication that they had brought with them on Dr. Hearn's orders.  Jones told the guards that he was not tested properly and that he would not take the medication.  Jones claims that the guards then threatened him about the consequences if he did not take the medication; in fear for his physical safety, Jones took the medication.

Jones's treatment continued for six months. During that time, he complained to a number of prison officials, including Dr. Hearn and White, that he did not need to be on medication. Throughout the treatment, Jones suffered serious side effects from taking the medication, including severe stomach pains, nausea, and disorientation. Jones finished the treatment in November 2004.

Neither Hearn nor White contests Jones's version of events.

### C.    This litigation

Jones filed this suit on July 25, 2004, approximately two months after he started taking the medication and four months before his treatment would end. The gist of Jones's complaint was that Hearn's and White's actions violated his Fourteenth Amendment substantive due process rights and his Eighth Amendment right to be free from cruel and unusual punishment. Additionally, Jones requested damages and a temporary restraining order that would suspend his medical treatment. Jones also filed a motion requesting that the court allow him to have a properly administered PPD test to determine whether he actually would have a positive reaction after the required 48 hours passed. The district court denied Jones's request for a TRO and denied his motion for another PPD test. Jones then filed a motion for summary judgment on both of his claims. The defendants responded by filing a motion for summary judgment on the issue of qualified immunity. The district court granted the defendants' motion, and this appeal ensued.

### II.    Discussion

We review grants of summary judgment de novo, "applying the same standards as those applicable in the district court." Breen v. Texas A&M Univ.[1] To determine whether Hearn and White are entitled to summary

---

[1]  485 F.3d 325, 331 (5th Cir. 2007), modified on rehearing, 494 F.3d 516 (5th Cir. 2007), petition for cert. filed (U.S. July 23, 2007) (No. 07-87).

judgment on the issue qualified immunity, we apply our familiar two-part test.  First, we must look at the evidence in the summary judgment record, in the light most favorable to Jones, to determine whether he has produced sufficient evidence such that a reasonable juror could find a constitutional violation.  McClendon v. City of Columbia.[2]  If Jones has produced sufficient evidence, we must determine whether Hearn's and White's conduct was objectively reasonable in light of clearly established law at the time of the alleged violation.[3]

With those principles in mind, we turn to Jones's claims.

A.    Jones's Eighth Amendment claim

Jones first alleges that Hearn's and White's actions violated his Eighth Amendment right not to be subject to cruel and unusual punishment.  In the context of medical care, a prison official can violate the Eighth Amendment when he or she "acts with deliberate indifference to a prisoner's serious medical needs."  Domino v. Tex. Dep't of Criminal Justice.[4]  To meet the standard, allegations of medical malpractice are not sufficient.  Estelle v. Gamble.[5]  Instead, the prisoner must show that officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."  Johnson v. Treen.[6]  Or, as the Supreme Court has put it, the prison official must "know[] of and disregard[] an excessive risk to

---

[2]  305 F.3d 314, 323 (5th Cir. 2002) (en banc).

[3]  Id. at 327.

[4]  239 F.3d 752, 754 (5th Cir. 2001).

[5] 429 U.S. 97, 105–06, 97 S. Ct. 285, 292 (1976) ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").

[6] 759 F.2d 1236, 1238 (5th Cir. 1985) (quoted in Domino, 239 F.3d at 756).

inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists[;] and he must also draw the inference." Farmer v. Brennan.[7] Applying these standards to the present case, a jury could find that White, but not Hearn, has violated Jones's Eighth Amendment right.

### 1.     Jones's Eighth Amendment Claim Against White

Jones has properly alleged that White violated his Eighth Amendment rights. According to Jones, when White arrived at his cell for the PPD test checkup, he told her that the required 48-hour waiting period had not passed. Jones also informed White that waiting at least 48 hours was particularly important in his case since he always had an allergic reaction to the PPD test. Faced with this information, White went ahead and tested Jones anyway, knowing that any test result would be inherently unreliable. White has never offered a medical explanation why an early checkup was proper or why she intentionally performed the test prematurely (and therefore incorrectly). Even when Jones started developing serious side effects to the medication, White still did not conduct a proper test to determine whether his medical treatment was appropriate.

In the words of the Farmer Court, a jury could conclude that White, by checking the test results early, knew of, but disregarded an excessive risk to Jones's health; knew her decision carried a risk to Jones because Jones told her why reading his test results early could lead to a false positive; and that White drew the necessary inference that the premature test results were unreliable.[8] Put another way, a jury could conclude that White was

---

[7] 511 U.S. 825, 837, 114 S. Ct. 1970, 1979 (1994).

[8] See id.

deliberately indifferent to whether Jones actually had tuberculosis and whether any burdensome medical treatment was necessary.

White argues that there was no Eighth Amendment violation because Jones had the choice, pursuant to the prison's tuberculosis health care policy, of stopping the medication and going into medical isolation. In support of her argument, White relies on McCormick v. Stalder, where we rejected a prisoner's Fourteenth and Eighth amendments attacks against the same tuberculosis policy because the policy was "a rational means of discharging the prison's duty to prevent tuberculosis."[9] In McCormick, however, the prisoner had admitted that the prison officials had not acted with deliberate indifference, thus eliminating the Eighth Amendment claim.[10] White points out that the McCormick court also thought it was important that the prisoner was given the option of choosing either the medication or isolation in determining that there was no due process violation.[11] White argues that giving the prisoner the choice is also dispositive of the Eighth Amendment claim. But a prison official cannot subject a prisoner to cruel and unusual punishment just because the prisoner is afforded due process. Jones's medical punishment would have been no less arbitrary had he chosen medical isolation instead of taking the medication. Jones has satisfied the first qualified immunity prong.

The second prong of the qualified immunity analysis is also met. The fact that prison officials cannot be deliberately indifferent to the serious medical needs of prisoners was clearly established at the time of White's

---

[9] 105 F.3d 1059 (5th Cir. 1997).

[10] Id. at 1061.

[11] Id. at 1061–62.

alleged violation,[12] and White had fair warning that her alleged treatment of Jones was unconstitutional.[13] Thus, White was not entitled to summary judgment on the issue of qualified immunity with respect to Jones's Eighth Amendment claim.

### 2. Jones's Eighth Amendment Claim Against Hearn

On the other hand, Jones cannot meet his burden to show that Dr. Hearn was deliberately indifferent to his serious medical needs. Dr. Hearn was not present when Jones was improperly tested for PPD and Jones has not produced any evidence suggesting that Hearn was otherwise deliberately indifferent to his serious medical needs. The district court, therefore, properly granted Hearn summary judgment on Jones's Eighth Amendment claim.

### B. Jones's Fourteenth Amendment claim

Jones also alleges that the defendants violated his Fourteenth Amendment right to substantive due process by (1) not giving him sufficient information about the medication he was prescribed so that he could intelligently exercise his right to choose between the medication and isolation and (2) forcing him to take the medication after he invoked his right to refuse it.

As for Jones's claim that his substantive due process rights were violated because he did not receive sufficient information regarding the medication, Jones did not raise that theory in either his motion for summary judgment or his opposition to the defendants' motion. It is therefore waived.

---

[12] See, e.g., Johnson, 759 F.2d at 1238.

[13] See McClendon v. City of Columbia, 305 F.3d 314, 329 (5th Cir. 2002) (en banc) (noting that "the 'salient question' under the second prong of the [qualified immunity] test is 'whether the state of the law at the time of the state action gave [the state actors] fair warning that their alleged treatment of the plaintiff was unconstitutional" (quoting *Roe v. Tex. Dep't of Protective & Regulatory Servs.*, 299 F.3d 395, 408–09 (5th Cir. 2002))).

See McDonald v. Bd. of Miss. Levee Comm'rs.[14]  Jones's claim that his substantive due process rights were violated when he was forced to take medication also fails.  Jones's declaration states that the prison guards—not the defendants—forced him to take the medication.  But the prison guards are not defendants in this case and Jones makes no showing why Hearn and White should be responsible for their conduct.  Hearn and White were properly granted summary judgment on Jones's Fourteenth Amendment claim.

Accordingly, we AFFIRM the grant of summary judgment with respect to Hearn and to the Fourteenth Amendment claim against White, and we REVERSE the summary judgment dismissing Jones's Eighth Amendment claim against White.  Cause REMANDED.

---

[14] 832 F.2d 901, 909 (5th Cir. 1987) ("[W]e will not disturb [a district court's] decision on the basis of a legal theory asserted for the first time on appeal.").