# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
September 8, 2011

Lyle W. Cayce
Clerk

No. 10-30396

HARDY ANDERSON,

Plaintiff–Appellee,

v.

TIM WILKINSON,

Defendant–Appellant

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 1:05-CV-932

Before KING, DAVIS, and GARZA, Circuit Judges.

PER CURIAM:[*]

Prison inmate Hardy Anderson sued the warden of his prison under 42 U.S.C. § 1983, alleging that the warden violated his Eighth Amendment rights by failing to prevent an attack against him by a fellow inmate. After a bench trial, the district court ruled in Anderson's favor and awarded him $9,000 in damages. Because the evidence does not support a finding that the warden was deliberately indifferent to a substantial risk of serious harm to Anderson, we reverse and vacate the judgment.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-30396

## FACTUAL AND PROCEDURAL BACKGROUND

Hardy Anderson was incarcerated in the Ash Unit at the Winn Correctional Center ("Winn"), where Defendant–Appellant Tim Wilkinson served as the warden. Winn inmates are permitted to use personal lockers to store items such as bowls, cups, food, and drinks. A microwave is available in a community space for inmates to heat food and drinks. The community space is accessible from the inmates' sleeping quarters, and the prison does not have a policy restricting the microwave's use to certain hours.

On May 2, 2004, Anderson had a verbal altercation with Lynn Wells, a new inmate who was unknown to Anderson. The argument was documented in the prison logbook that day, but was not reported to prison officials because no physical violence took place. Sometime around 1:45 a.m. that same night, Wells heated a bowl of water in the microwave, approached the sleeping Anderson, and threw the boiling hot water directly in his face. Wells was not violating any Winn regulations by using the microwave at that hour. Corrections officers broke up the ensuing fight, but Anderson was treated for first and second degree burns on his face, neck, eye, shoulder, and back.

Anderson sued Wilkinson in his personal capacity under 42 U.S.C. § 1983, alleging that inadequate security in the sleeping area allowed Wells's attack to take place. Following a bench trial, the district court ruled in Anderson's favor. The court held that, while Anderson's claims "regarding the general question of security adequacy must fall," Wilkinson had been deliberately indifferent to the serious risk of hot-water-throwing attacks when he made the microwave available to inmates during sleeping times "without regulation, monitoring, or having the oven secure."[1] The court held Wilkinson liable for $9,000 in damages.

---

[1] The record shows that, before trial, both Anderson and Wilkinson understood Anderson's sole allegation to concern inadequate security at Winn, specifically the lack of guards inside the sleeping tier of the Ash Unit. During trial, however, the district court

No. 10-30396

Wilkinson appeals the district court's judgment, arguing that there was insufficient evidence at trial to find that he was deliberately indifferent to a substantial risk of serious harm to Anderson from a hot-water-throwing attack by another inmate.

## STANDARD OF REVIEW

When a bench trial has preceded the judgment on appeal, we review the district court's finding of fact for clear error and its legal conclusions *de novo*. *French v. Allstate Indem. Co.*, 637 F.3d 571, 577 (5th Cir. 2011). "A finding is clearly erroneous if it is without substantial evidence to support it, the court misinterpreted the effect of the evidence, or this court is convinced that the findings are against the preponderance of credible testimony." *Id.* at 577 (citation and internal quotation marks omitted). We will reverse under this standard "only if we have a definite and firm conviction that a mistake has been committed." *Id.* (citation and internal quotation marks omitted).

## DISCUSSION

"It is well established that prison officials have a constitutional duty to protect prisoners from violence at the hands of their fellow inmates." *Longoria v. Texas*, 473 F.3d 586, 592 (5th Cir. 2006) (citing *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994)). This duty, which is grounded in the Eighth Amendment's prohibition against "cruel and unusual punishments," is nevertheless a limited one. *See Farmer*, 511 U.S. at 832–34. To succeed on a claim for failure to protect, an inmate must show that (1) he was "incarcerated under conditions posing a substantial risk of serious harm," and that (2) a prison official was "deliberately indifferent" to this risk. *Id.* at 834.

---

appears to have broadly construed Anderson's complaint to encompass a claim that the warden's failure to limit microwave access allowed the attack to take place. Because Wilkinson on appeal does not object to the district court's re-characterization of Anderson's complaint, we will consider the claim as construed by the district court.

No. 10-30396

Assuming *arguendo* that Anderson was "incarcerated under conditions posing a substantial risk of serious harm," *id.*, we turn our attention to the second element of the *Farmer* test. A prison official is "deliberately indifferent" to a risk when he "knows of and disregards an excessive risk to inmate health or safety." *Id.* at 837. To "know of" a risk, an official must be "subjectively aware" of the risk: that is, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see also Adames v. Perez*, 331 F.3d 508, 512 (5th Cir. 2003). This issue is a question of fact. *Farmer*, 511 U.S. at 842; *Horton v. Cockrell*, 70 F.3d 397, 401 (5th Cir. 1995). Finally, even if a prison official was subjectively aware of the risk, he may be found free from liability if he "responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844.

The deliberate indifference standard is "an extremely high standard to meet." *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). We have declined to find deliberate indifference where an official "*should have*" inferred a risk posed to an inmate, requiring proof that the official "*did* draw such an inference." *Adames*, 331 F.3d at 514; *see also Farmer*, 511 U.S. at 838; *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 650 (5th Cir. 1996) (en banc). Nevertheless, an inmate does not have to produce direct evidence of an official's knowledge about the risk; he may rely on circumstantial evidence to demonstrate such knowledge. *See Farmer*, 511 U.S. at 842; *Adames*, 331 F.3d at 512. For example, an inmate can prove the requisite knowledge by showing that conduct or occurrences were "longstanding, pervasive, well-documented, or expressly noted by prison officials in the past" such that officials had subjective knowledge of the complained risk. *See Farmer*, 511 U.S. at 842–43 (internal quotation marks omitted); *Adames*, 331 F.3d at 512.

No. 10-30396

Anderson takes this latter route, arguing that hot-water-throwing attacks were so "longstanding, pervasive, well-documented, or expressly noted by prison officials in the past" such that Wilkinson had subjective knowledge of this risk, *id.* at 842–43.  Wilkinson argues that the evidence adduced at trial did not demonstrate that he subjectively knew of this risk.  We agree, and therefore do not reach the question whether Wilkinson disregarded such a risk.

Four witnesses testified at trial in connection with this issue.  Anderson testified that "[w]e had a whole lot of these cases at Winn Correctional Center about throwing hot water on people's faces."  Upon questioning by the district court, Anderson stated that there had been "at least around about eight cases," and that five of them had happened before his incident.  But when the court asked him to testify about those incidents, Anderson could not provide any details.  He spoke of another inmate relating to him a similar incident in which hot water was thrown in his face while he was lying on his bed, but Anderson also testified that this other inmate never told the warden or anyone else at the prison about the attack.  Other than this hearsay testimony, Anderson failed to offer any specific corroboration of his allegations, stating only that other inmates would "talk about how many cases like that had happened" during recreation.  Anderson admitted that he did not know whether any of these other alleged incidents had been reported to Wilkinson or to Winn corrections officers.

The shift supervisor on duty at the time of the incident, who had worked at Winn for over seventeen years, recalled a single incident at Winn in which an inmate had used a microwave oven to boil water to throw on another inmate.  However, she was unsure whether this incident occurred before or after Wells's attack on Anderson.  Another Winn corrections officer who had worked at Winn for twelve years testified that although she had read about such cases, she was not aware of any incidents at Winn wherein an inmate had used the microwave

oven to boil something which he then threw at another inmate. In fact, she testified that "it kind of surprised [her] that it happened like that."

Finally, Wilkinson testified as follows:

I've been locked up for 28 years, Mr. Anderson. You can have all the security that you want. You're not going to stop things in prison from happening. . . . I've not been in a penitentiary yet, whether it be male, female, or juvenile, that you don't have water throwing incidents, that you don't have fights, that you don't have stabbings, that you don't have aggression against one another people, because you're all locked in the same area and you're not going to get along every day.

Anderson points to this testimony to support the district court's conclusion that "water-throwing incidents [were] well documented in Wilkinson's experience." However, it is not clear that Wilkinson was testifying about incidents involving hot water; Wilkinson's remarks followed a series of questions posed by Anderson regarding the availability of cleaning chemicals that inmates could mix with water in a water-throwing attack. We are thus left with an ambiguous statement by the warden, inadmissible hearsay testimony from Anderson about similar incidents that may or may not have been reported to the warden, and testimony from a corrections officer that one such attack may or may not have occurred before the incident at issue here. It is difficult to see how this evidence could constitute a "longstanding and pervasive" problem of which Wilkinson must have been aware. *Cf. Adames*, 331 F.3d at 513 (concluding that testimony evidencing three instances of inmates escaping their cells did not shed any light on whether prison officials were subjectively aware of a substantial risk of harm to an inmate at the hands of another inmate who had escaped his cell).

The evidence adduced at trial does not support a finding either that Wilkinson was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]," or that he actually drew this

inference. *Farmer*, 511 U.S. at 837. The district court therefore clearly erred in concluding that Wilkinson was deliberately indifferent to a substantial risk of serious harm posed by hot-water-throwing attacks at Winn.

## CONCLUSION

For the foregoing reasons, we REVERSE and VACATE the judgment of the district court.