PRISCILLA R. OWEN, Circuit Judge,
dissenting:
I respectfully dissent. The majority opinion incorrectly applies the law governing claims that a prison official was deliberately indifferent to the safety of inmates. The majority opinion also supports its conclusion that there was evidence of deliberate indifference with non-existent “facts” that the Plaintiffs did not even allege, must less prove.
I
With great respect, the majority opinion does not adhere to the Supreme Court’s and our precedent regarding an inmate’s claim that a prison official violated the Eighth Amendment by failing to protect a prisoner from harm inflicted by other inmates. An official’s knowledge of the risk of harm posed by a history of inmate-on-inmate violence at this prison does not, standing alone, constitute evidence from which a jury may infer deliberate indifference under the facts of this case. This is not a case in which an inmate is claiming that he should not have been placed in the general population of violent offenders.[1] The allegations before us revolve around an unloaded block gun. There must be evidence that the official had subjective knowledge of the risk of harm presented by her own acts and omissions regarding the block gun. There was no such evidence, and consequently, the majority opinion improperly equates negligent acts and omissions with deliberate indifference. The majority opinion’s reasoning permits liability to be imposed on a corrections officer whenever that individual knows that he or she is working in a prison that has a history of inmate-on-inmate violence and whose negligence contributes to a situation in which inmates are attacked by other prisoners.
Additionally, the majority opinion’s reasoning has no evidentiary support. The opinion says that a “jury could also infer that Hampton was aware that leaving Lieutenant Taylor [Hampton’s supervisor] alone to guard the exercise pens without any block gun ammunition ... presented a substantial risk of serious harm.”[2] However, there was no evidence — none whatsoever — that Hampton knew that the block gun was unloaded when she left Taylor alone for what she thought would be a minute or two. The majority opinion correctly acknowledges earlier, in its recitation of the factual background of this case, that Hampton was unaware that she was carrying an unloaded block gun[3] and that Hampton testified that she did not check the block gun for ammunition because she assumed that it was loaded.[4] Her supervisor, Lieutenant Taylor, had been on yard duty, in possession of the block gun, for quite some time before Hampton reported for duty at the prison. Taylor gave the *201 block gun to Hampton when she relieved him of yard duty while they were standing in the yard itself. She assumed that the block gun was loaded, and thereafter, she was on duty in the prison yard with an unloaded block gun before she gave the gun back to Taylor while she retrieved a money withdrawal slip that one of the plaintiffs in this case asked her to get for him. There is no evidence that Hampton was subjectively aware that the block gun was unloaded or from which the jury could infer that Hampton was subjectively aware that the gun was unloaded. Indeed, the Plaintiffs have not argued that Hampton knew the block gun was unloaded. The only arguments that the Plaintiffs make in their briefing before this court are that
• “Hampton inexplicably failed to ascertain that she was holding an empty block gun throughout her shift on yard call.”
• “Further, when she decided to leave the yard on a ‘quick’ errand, she failed to check the block gun she turned over to the Defendant Taylor, thus handing him an unloaded weapon, and failed to give him any ammunition for the block gun.”
• “[T]he Plaintiffs’ expert in corrections unequivocally concluded that the Defendant Hampton’s failure to check the block gun, her relinquishing of an empty block gun to the Defendant Taylor and her taking the ammunition for the block gun with her violated correctional standards and created a substantial risk of serious harm amounting to deliberate indifference.”
There is absolutely no evidence from which a jury could reasonably infer that Hampton knew that she had left Taylor on yard duty with an unloaded block gun. Hampton’s failure to check the block gun and her failure to return to Taylor the two rounds of ammunition that he had given her earlier in the day were negligent acts or omissions, but they do not, as a matter of law, rise to the level of deliberate indifference.
II
In order for an inmate to prevail on an Eighth Amendment failure-to-protect claim, he must demonstrate that “he was incarcerated under conditions posing a substantial risk of serious harm and. that prison officials were deliberately indifferent to his need for protection.”[5] This is an “extremely high standard to meet.”[6] The prisoner must demonstrate that the officer was “aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed],” that the officer in fact drew such an inference, and that the officer nevertheless disregarded the risk.[7] This standard “describes a state of mind more blameworthy than negligence ... [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.”[8] The Supreme Court has defined this standard as equivalent to recklessness, in which “a person disregards a risk of harm of which he is aware.”[9] An inmate can prove awareness of the risk with circumstantial evidence that “the risk to inmate health or safety was so longstanding and pervasive *202 that the official must have been aware of this danger.”[10] However, the fact that there had been a history of inmate-on-inmate violence in Unit 32 and that Hampton was aware of this danger does not translate into evidence that she knew she had left Lieutenant Taylor with an unloaded block gun or that she acted recklessly in failing to ascertain that the gun was unloaded. The Supreme Court has admonished that “an official’s failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot ... be condemned as the infliction of punishment.”[11]
III
Lieutenant Taylor was Hampton’s supervisor. He was on yard duty before Hampton reported for work at the prison on the day in question and was in possession of the block gun. Hampton testified, without contradiction, that Taylor should have checked the block gun to ensure that it was loaded before the first inmate was allowed to leave the indoor area and was brought to an individual outdoor pen or cage. The block gun was capable of holding one round of ammunition, which consisted of a rubber slug. There were three rounds of rubber slugs for the block gun that the guard on duty would have. When Hampton relieved Taylor of yard duty, Taylor handed the block gun to her and gave her two rounds of the rubber ammunition. Hampton testified that this caused her to assume that there was at least one round of ammunition in the block gun. She remained on yard duty until the time for the inmates to be taken back indoors had come, not knowing that the block gun was unloaded. One of the Plaintiffs, Samuel Williams, told Hampton that he would not leave his outdoor pen until Hampton brought him a money "withdrawal slip from the case manager. Hampton left the yard to obtain this document, and Lieutenant Taylor reassumed yard duty. As Hampton left the yard, she handed the block gun to Taylor and thought that she would be inside no longer than a minute or two to get a withdrawal slip. She did not return to Taylor the two rounds of ammunition that he had given to her earlier in the day. The escape of two inmates from their individual outdoor pens occurred just after Hampton went inside.
When the two escaped inmates ran toward Taylor, he threw the block gun at them, then retreated inside. In the process of doing so, he dropped the keys to the outside pens onto the ground. Two inmates who were confined in their respective pens and who feared that they would be attacked by the escaped inmates begged Taylor to pick up the keys before he left the yard, but Taylor did not do so. The two inmates who had escaped retrieved the keys and released five other inmates from their respective pens. These seven escaped inmates attacked other inmates, stabbing and beating them, using the keys that Taylor had dropped to open the pens. One prisoner was killed; others were seriously injured. The surviving inmates, joined by the family of the murdered inmate, sued various prison officials, including Hampton. At the conclusion of a trial, a jury found that Hampton was deliberately indifferent to the safety of the inmates who were attacked.
As already discussed, there is no evidence that Hampton knew that the block gun was unloaded. The majority opinion concludes that even so, Hampton acted with deliberation because she knew when *203 she left the yard that she had two of the three rubber slugs in her pocket and did not return them to Taylor. But knowledge that she had two of the rubber slugs, presumably leaving Taylor with only one, does not rise to recklessness, which can constitute deliberate indifference, particularly given the facts of this case. Hampton’s act or omission in taking two slugs with her may have been negligence, but it is not deliberate indifference to the risk that inmates will attack other prisoners. The evidence at trial was that a guard should not even check to see if the block gun was loaded if the guard was given the gun while on the yard because “if you open that block gun up and you mess around and pop out a projectile, you make yourself vulnerable as it relates to the inmates.” Further, there is no evidence that Hampton consciously perceived that there was a substantial risk that Taylor would be rushed by two escaped prisoners and would be placed in a more precarious position by having only one round of ammunition, since, had he had the two rounds of ammunition that Hampton had with her, opening up the block gun to reload after each shot fired would be time-consuming and perhaps impossible under the circumstances Taylor faced. The majority opinion demands near-perfect foresight from prison guards like Hampton. It also assumes that had Taylor just had the two rounds of ammunition that Hampton took back inside with her, Taylor could have ascertained that the block gun was unloaded as the escaped prisoners charged him, loaded it, fired a shot, or perhaps reloaded and fired two shots, and stopped the escaped inmates. This, the majority opinion says, is the risk of which Hampton was consciously aware and to which Hampton was deliberately indifferent.
The Supreme Court explicated the basis for an official’s liability when an inmate harms another prisoner in Farmer v. Brennan.[12], Liability may be imposed when “[a] prison official’s ‘deliberate indifference’ to a substantial risk of serious harm to an inmate violates the Eighth Amendment.”[13] The Court expressly “rejected] [the] invitation to adopt an objective test for deliberate indifference.”[14] The Court “define[d] the term ‘deliberate indifference’ ... by requiring a showing that the official was subjectively aware of the risk.”[15] That required showing is lacking in this case. There is no evidence that Hampton was subjectively aware of the risk that her conduct posed for the inmates who were attacked.
The Supreme Court explained in Farmer v. Brennan that “a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.”[16] The Plaintiffs failed to adduce evidence that satisfies this requirement. They have only produced evidence that Hampton failed to alleviate a significant risk that she should have perceived but did not. This falls squarely within a range of conduct that the Supreme Court has said will not suffice to prove deliberate indifference: “an official’s failure to alleviate a significant risk that he *204 should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.”[17]
Hampton admitted to making mistakes. The majority opinion points out that she was reprimanded for these mistakes. She was found to have committed a Group 3 violation, which indicates that her actions had threatened human life and safety, and she was suspended for ten days. This is not evidence that she was deliberately indifferent. First, a violation of prison policy “is insufficient by itself to support an argument for deliberate indifference.”[18] Second, although her actions may have contributed to the endangerment of human life and safety, and an inmate was killed and others were injured that day, that is not the test.
Hampton’s actions and omissions do not constitute deliberate indifference. No reasonable jury could have concluded from the evidence presented at trial that Hampton consciously disregarded the risk of inmate-on-inmate harm when she relinquished yard duty to her superior officer, Lieutenant Taylor. There were steps Hampton should have taken, and she admitted at trial that she should have taken them. But § 1988 claims for damages against prison officials must be made of sterner stuff.[19] Admissions of negligence will not suffice. Hampton was entitled to judgment notwithstanding the verdict.

.Cf. Fanner v. Brennan, 511 U.S. 825, 849, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (remanding for further factual development when a transsexual asserted that each defendant had knowledge that the prison "was and is, a violent institution with a history of sexual assault, stabbings, etc., [and that] each defendant showed reckless disregard for [his] safety by designating [him] to [the] institution knowing that [he] would be sexually assaulted").

. Atzfeatl95.

. Ante at 197.

. Jones v. Greninger, 188 F.3d 322, 326 (5th Cir. 1999).

. Domino v. Tex. Dep't of Crim. Justice, 239 F.3d 752, 756 (5th Cir.2001).

. Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

. Id. at 835, 114 S.Ct. 1970.

. Id. at 836-37, 114 S.Ct. 1970.

. Adames v. Perez, 331 F.3d 508, 512 (5th Cir.2003).

. Farmer, 511 U.S. at 838, 114 S.Ct. 1970.

. 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

. Id. at 828, 114 S.Ct. 1970.

. Id. at 837, 114 S.Ct. 1970.

.Id. at 829, 114 S.Ct. 1970.

.Id. at 837, 114 S.Ct. 1970.

. Id. at 838, 114 S.Ct. 1970.

. Longoria v. Texas, 473 F.3d 586, 593 n. 9 (5th Cir.2006).

. Farmer, 511 U.S. at 835, 114 S.Ct. 1970 ("[D]eliberate indifference describes a state of mind more blameworthy than negligence.”); Adames v. Perez, 331 F.3d 508, 514 (5th Cir. 2003) (”[N]egligence is insufficient to support a finding of liability.”). See also Davidson v. Cannon, 474 U.S. 344, 348, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986); Daniels v. Williams, 474 U.S. 327, 329-30, 106 S.Ct. 677, 88 L.Ed.2d 662 (1986); Hare v. City of Corinth, Miss., 74 F.3d 633, 648 (5th Cir. 1996).