# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-41724

United States Court of Appeals
Fifth Circuit

**FILED**
April 5, 2019

Lyle W. Cayce
Clerk

GEORGE EDWARD TUSTIN, JR.,

      Plaintiff - Appellant

v.

BRAD LIVINGSTON; BRYAN COLLIER, EXECUTIVE DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE; FRANKIE REESCANO; PATRICIA LECUYER; EUGENE G. MAINOUS; NICHOLAS RUSSO; STEPHEN HAMILTON, Doctor of Dental Surgery; PAUL E. STRUNK, University of Texas Medical Branch Stringfellow R-2 Unit; ELGENE G. MAINOUS, Doctor of Dental Surgery,

      Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 3:12-CV-0022

Before JOLLY and ENGELHARDT, Circuit Judges.*

PER CURIAM:**

George Edward Tustin, Jr., Texas prisoner #443411, filed this pro se § 1983 civil rights lawsuit alleging that prison officials and healthcare

---

* This matter is being decided by a quorum. *See* 28 U.S.C. § 46(d).

** Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-41724

providers refused to extract his abscessed tooth.  He claims that the extreme pain he suffered during the four years he awaited surgery constituted cruel and unusual punishment in violation of the Eighth Amendment.  The district court dismissed Tustin's complaint for failure to state a claim, reasoning that the allegations did not amount to deliberate indifference.  We previously granted Tustin leave to proceed in forma pauperis on appeal.  We now affirm the district court.

## I.

Tustin, who is incarcerated in the Texas Department of Criminal Justice (TDCJ), suffers from numerous medical conditions.[1]  In 1994, he was diagnosed as having an arachnoid cyst on his brain.  In 1998, he was diagnosed as suffering from widespread cerebral dysfunction following an abnormal EEG.  In March 2009, he began experiencing dental problems.  On March 4, Tustin saw a prison dentist due to swelling and pain on his #20 tooth.  Tustin is allergic to the local anesthetic used in dental procedures, and therefore, the dentist performed the filling without anesthetic to avoid a possible allergic reaction.

Eight days later, on March 12, Tustin returned to the dentist about an abscess and pain on his #20 tooth.  The tooth needed to be removed, but the prison dentist could not perform the procedure because of Tustin's allergies to local anesthetics.  Instead, the dentist prescribed Tustin antibiotics and ibuprofen for the pain and referred him to an oral surgeon at the University of Texas Medical Branch (UTMB) in Galveston.  Tustin was scheduled to have the tooth extracted at UTMB Galveston on July 20, 2009.  On the bus en route to UTMB Galveston, however, Tustin suffered a seizure.  Tustin was diverted

---

[1] The following facts are drawn from Tustin's live complaint, filed on February 18, 2016, and the medical records that Tustin has attached to and incorporated into his complaint.

to the Byrd Unit in Huntsville where he was treated and prescribed anti-seizure medicine.  Due to his cyst, dentists refused to extract Tustin's #20 tooth.

Tustin saw the prison dentist again in February 2010.  The dentist stated that he would refer Tustin back to UTMB Galveston to have the #20 tooth removed.  During another appointment with the prison dentist in April 2010, Tustin was again told that he would be sent back to UTMB Galveston to have the tooth extracted.

Tustin saw two other prison dentists in 2010.  In September 2010, Tustin saw a prison dentist for teeth cleaning.  The dentist noted defects on the #5 and #31 tooth and stated that he would see if Tustin needed to be sent to UTMB for surgery. In December 2010, Tustin saw Dr. Nicholas Russo, who noted that Tustin complained of problems with his #5, #17, and #31 teeth.  Dr. Russo asked Tustin if he would like to have his #5 tooth restored without local anesthetics and Tustin agreed.  Dr. Russo also referred Tustin to UTMB Galveston to have his #17 tooth extracted.

In March 2011, Dr. Russo attempted to perform a restoration on tooth #20 without local anesthetic due to Tustin's allergy.  During the procedure, however, Tustin became unresponsive and he was moved to the emergency room for treatment.  The prison dentist followed up with Tustin in the emergency room.  Tustin informed the dentist that he suffered from daily blackouts due to the cyst on his brain.  The dentist rescheduled the restoration procedure.

On April 4, 2011, Tustin saw Dr. Elgene Mainous at UTMB Galveston. Dr. Mainous told Tustin that he would not allow UTMB dentists to put Tustin under general anesthesia for tooth extractions until his cyst was treated or removed.  Tustin, however, was still able to receive unanesthetized treatment and, on April 5, Dr. Russo completed a filling on his #5 tooth.  Tustin continued

to visit prison dentists throughout 2011. Those dentists noted that Tustin's #20 tooth extraction was delayed due to complications caused by his cyst and that he was awaiting a neurological assessment. But Tustin had trouble getting clearance from neurologists to undergo general anesthesia. At a neurological consultation in November 2011, Tustin reported that he was suffering from worsening headaches and seizure-like muscle spasms multiple times a day despite his anti-seizure medication. This was confusing to the doctors who examined him because his "symptoms are not [consistent with] typical seizure descriptions" and "arachnoid cysts do[] not often present with headaches." Tustin was scheduled to undergo an EEG to determine if he was suffering from seizures and the neurosurgeon suggested the possibility of surgery to decompress the arachnoid cyst.

Tustin also suffered from intermittent chest pain. When this condition began worsening in 2011, his unit doctors required him to undergo a stress test to be cleared for surgery. Tustin was unable to complete at least one stress test due to a vasovagal response.

Despite these hurdles, prison dentists still attempted to treat Tustin's dental problems. According to Tustin, Dr. Russo prescribed him over 450 doses of pain medication and 40 doses of antibiotics from September 2011 through January 2013; Dr. Stephen Hamilton prescribed Tustin over 200 doses of pain medication; Patricia LeCuyer, NP, prescribed Tustin over 200 doses of pain medication and 50 doses of antibiotics. One UTMB dentist even referred Tustin for a dermatology consultation to determine whether he was allergic to lidocaine or certain preservatives within the anesthetics in hope that they could "do these extractions in clinic with local anesthetics." On February 6, 2013, Dr. Mainous cleared Tustin for surgery and extracted his #17, #19, #20, and #31 teeth.

No. 16-41724

## II.

Tustin, proceeding pro se and in forma pauperis filed a claim for damages and injunctive relief in federal district court, arguing that the delay in removing his #20 tooth violated the Eighth and Fourteenth Amendments. Tustin also alleged a violation of Texas state law. The defendants filed a motion to dismiss for lack of subject matter jurisdiction and failure to state a claim. Fed. R. Civ. P. 12(b)(1), (6). The district court dismissed Tustin's federal claims with prejudice under 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim and declined to exercise supplemental jurisdiction over his state law claims pursuant to 28 U.S.C. § 1367(c)(3). The district court determined that Tustin's allegations did not amount to deliberate indifference because they did not establish that anyone who treated him refused to help or treat Tustin. We granted Tustin leave to proceed in forma pauperis on whether the district court erred in determining that the delay in treatment was not caused by deliberate indifference.[2]

## III.

We review de novo a dismissal pursuant to § 1915(e)(2)(B)(ii), which is the same standard applied to dismissals under Fed. R. Civ. P. 12(b)(6). *See Ruiz v. United States*, 160 F.3d 273, 275 (5th Cir. 1998). Under that standard, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). We accept as true all well-pleaded facts, "viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th

---

[2] Tustin did not appeal the denial of injunctive relief or dismissal of his Fourteenth Amendment claim and therefore he has abandoned them. *See Youhey v. Collins*, 985 F.2d 222, 224–25 (5th Cir. 1993); *Brinkmann v. Dallas Cty. Deputy Sheriff Abner*, 813 F.2d 744, 748 (5th Cir. 1987).

Cir. 2007). We hold allegations of pro se complaints "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972).

## IV.

To state a claim under 42 U.S.C. § 1983 for violation of the Eighth Amendment, a prisoner must allege that prison officials showed "deliberate indifference to a prisoner's serious illness or injury." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The standard for deliberate indifference is "subjective recklessness." *Farmer v. Brennan*, 511 U.S. 825, 839–40 (1994). For a prison official to be liable, he must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837.

To establish deliberate indifference, Tustin must show "that a prison official 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Easter v. Powell*, 467 F.3d 459, 464 (5th Cir. 2006) (quoting *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)). Delay in medical care, however, "can only constitute an Eighth Amendment violation if there has been deliberate indifference [that] *results in substantial harm*." *Id.* (alteration in original) (quoting *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993)). An allegation of "[u]nsucessful medical treatment does not give rise to a § 1983 cause of action. Nor does mere negligence, neglect or medical malpractice." *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991) (citations and internal quotation marks omitted).

Tustin has failed to state a claim for deliberate indifference. In response to Tustin's complaint that his #20 tooth was abscessed, he was referred to UTMB Galveston to have it removed in July 2009. This surgery was only delayed because Tustin suffered a seizure while being transported to the

hospital. Tustin, however, continued to receive treatment from prison dentists, although they could not fill or remove the tooth at the prison hospital because he was allergic to local anesthetics. By his own estimate, Tustin had at least six appointments with prison or UTMB dentists in 2010. And he admits that he was prescribed pain medication and antibiotics to treat his condition. During this period, from 2009 until 2011, Tustin received ongoing dental treatment. *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995) ("Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference." (citing *Mendoza*, 989 F.2d at 193–95)). In 2011, Dr. Russo attempted to perform a root canal on tooth #20 without local anesthesia but was unable to complete the procedure because of Tustin's neurological problems. Further delay in Tustin's treatment was caused by Dr. Mainous's decision that Tustin receive treatment for his cyst before being placed under general anesthesia. Prison officials, therefore did not "refuse[] to treat him, ignore[] his complaints, intentionally treat[] him incorrectly, or engage[] in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino*, 239 F.3d at 756 (quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)). To the contrary, the decision was "a classic example of a matter for medical judgment." *Id.* (quoting *Estelle*, 429 U.S. at 107). Ultimately, Tustin's allegations are simply disagreements with the treatment decisions made by his dentists. That is insufficient to state a claim of deliberate indifference.

V.

In short, Tustin received ongoing treatment for his dental problems. The decision not to remove Tustin's tooth was a matter of medical judgment, not deliberate indifference. The judgment of the district court is

AFFIRMED.